## CITY OF TULSA v. OKLAHOMA NATURAL GAS CO.

No. 15130—Opinion Filed Feb. 3, 1925.

Rehearing Denied March 17, 1925.

### Trial—Demurrer to Evidence—Inferences — Sufficiency of Evidence.

On the trial of a case where defendant relies solely upon a demurrer to plaintiff's evidence, the court is authorized to consider all evidence introduced by plaintiff, together with all inferences of fact necessarily or reasonably to be deduced therefrom, and after so considering such testimony and such inferences of fact if it be determined therefrom that plaintiff has established a prima facie case, it is not error to overrule the demurrer to the evidence, nor is it error to render judgment in such a case in favor of plaintiff where defendant elects to stand upon the demurrer and introduces no testimony.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by Oklahoma Natural Gas Company against City of Tulsa. Judgment for plaintiff, and defendant brings error. Affirmed.

The Oklahoma Natural Gas Company commenced this action by filing its petition in the district court of Tulsa county October 25, 1922, said petition embracing six separate and distinct causes of action. The various claims of plaintiff are based upon service rendered by the plaintiff to various institutions of the city of Tulsa during a period of some 18 months. The first cause of action was for gas furnished to the Carnegie Library in the sum of $193.44. The second was for gas furnished to the Convention Hall in the sum of $353. The third was for gas furnished to 503 N. Nogales ave. in the sum of $512.10. The fourth was for gas furnished to the incinerating plant in the sum of $1,532.50. The fifth was for gas furnished to the municipal building in the sum of $2,236.72. The sixth was for gas furnished to the city waterworks plant in the sum of $8,000. In reference to this last cause of action it is shown that the bill originally rendered amounted to $13,733.50, but that certain claimed deductions made by the city were allowed thereon, and that the account was finally adjusted and compromised between plaintiff and the waterworks and sewerage commissioner for the stated sum of $10,000 to be paid in ten monthly installments of $1,000 each, and that only the first two installments were paid, leaving the balance of $8,000 sued on in this action.

The city of Tulsa filed a demurrer to the petition of plaintiff, which was later withdrawn, and the city thereupon filed its answer consisting of a general denial.

Thereafter, on January 23, 1924, the cause came on regularly for trial, and, a jury being waived, the issues both of fact and of law were submitted to the court. At the conclusion of plaintiff's evidence the city de-

murred thereto, which demurrer was by the court overruled. Thereupon the city elected to stand upon its demurrer to the evidence, and the court rendered judgment in favor of the plaintiff for the amount sued for, together with accrued interest.

After unsuccessful motion for new trial the city of Tulsa has brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

I. J. Underwood and Harry L. S. Halley, for plaintiff in error.

Humphrey & Campbell and Ames, Lowe & Richardson, for defendant in error.

Opinion by LOGSDON, C. Defendant assigns five specifications of error in its petition in error, but all are comprehended by and argued under one proposition in the brief. That proposition reads:

"The plaintiff wholly failed to establish any contractual relation with the city of Tulsa in connection with the items sued for, and its evidence wholly failed to establish a prima facie case or sufficient grounds for recovery against a municipal corporation."

Two contentions are made under this proposition, as follows: (a) That no contract between plaintiff and defendant was shown, and therefore no liability was established; (b) that it was not shown that any appropriation was ever made or that any sum of money was ever available for the payment of these claims.

Under its first contention defendant relies on the first and second paragraphs of section 35, art. 11, of the Tulsa city charter. The first paragraph requires all contracts of the city to be based upon appropriation, to conform to specifications, and to be signed by the mayor and auditor. The second paragraph requires all contracts in excess of $500 to be let on sealed competitive bids conforming to approved specifications, and only after advertisement calling therefor. If it were not clear upon their face that these provisions were not intended to apply to the ordinary current operating expenses of the various city departments, it is made evident by the language of the third paragraph of the same section, which reads:

"The board of commissioners shall determine the most advantageous bid for the city, and shall enter into contract with the party submitting the lowest secure bid; and, if, in the opinion of the board of commissioners, none of said bids are satisfactory, then the board of commissioners may have the said

work done by day labor, and a detailed statement of all such work done by day labor, showing the cost of same, shall be filed with the board of commissioners. Pending the advertisement of the work of contract proposed, specifications therefor shall be on file in the office of the city auditor, subject to the inspection of all parties desiring to bid."

Obviously the city could not produce natural gas for heating and power purposes by employment of day labor. It seems clear that section 35 was intended to cover extraordinary expenditures of the city, which should be made only in the manner therein authorized.

By section 19, art. 3, of the charter it is provided:

"The board of commissioners shall have the management and control of the finances of the city, except as otherwise herein provided. They shall have power to appropriate money and provide for the payment of debts and expenses of the city. * * *"

The accounts sued on embraced many items of service to several institutions of the city, extending over many months. The service was measured through meters and the variable consumption demonstrates how impracticable, if not impossible, it would be for the commissioners to make express contracts based on specifications for such service. Thus, for service to the municipal building, covering 18 months, the consumption ranged from $3.47 in June, 1919, to $245.10 in December, 1920. At the waterworks plant the consumption during eight months ranged from $1,598.90 to $3,594.25.

The charter provisions relied on by counsel for defendant are not considered applicable to the facts here presented. But it is insisted that there was no contract, either express or implied, which could fix liability on the city. It is in evidence that plaintiff is carrying out the terms of a franchise held by a former gas distributing company. Mr. Sharp, as a witness for plaintiff, testified:

"We are still furnishing it (gas) free to the old city hall; that was originally under the Osage and Oklahoma franchise; (it) is still being furnished free. Mr. Underwood: That is, the present police station? A. Yes, sir; the police station. Court: Still doing that? A. Yes, sir, we have been doing that; those bills are not in this."

The existence and binding effect of this contract was not questioned by the city, nor did its counsel object to the above testimony as not being the best evidence thereof, or upon any other ground. In the absence of timely objection the court was authorized to consider this testimony, together with the

reasonable inferences to be drawn therefrom, in determining the existence of contractual relations between plaintiff and defendant when passing upon the demurrer to the evidence. Jones v. Citizens' State Bank, 39 Okla. 393, 135 Pac. 373; Dane v. Bennett, 51 Okla. 684, 152 Pac. 347; Shawnee Light & Power Co. v. Sears, 21 Okla. 13, 95 Pac. 449; Farmers State Bank of Jefferson v. Jordon, 61 Okla. 15, 160 Pac. 53. Its weight was for determination by the court as the trier of the facts.

It is further contended that as to the claim of $8,000 for service to the city waterworks plant, which is the balance claimed under a compromise adjustment, no authority existed in the water commissioner to bind the city by such compromise. By section 8, art. 3 of the charter, it is provided, how the "Waterworks and Sewerage Commissioner" shall be appointed. (This has now been changed by amendment, but the change is not material here.) The authority of such commissioner over claims against his department is thus stated in section 9 of the same article:

"The commissioners named as the head of each department shall audit all accounts or claims against it, unless he be absent or fail or refuse so to do, in which event the mayor shall appoint another commissioner to act in his stead during his absence, or to audit such claims and accounts as the said commissioner shall fail or refuse to act upon; but before payment all accounts shall be acted upon and approved by said board of commissioners at a meeting of said board."

C. S. Younkman was waterworks and sewage commissioner from May, 1920, to May, 1922, and a Mr. Graham was chief clerk under him. In reference to the adjustment of this claim he testified:

"Q. Now, when Mr. Porter came to see you did you entertain the matter which he presented to you? A. Yes, sir; I had Mr. Graham immediately look back and look up our bills that we had been paying. Q. Do you recall whether or not after receiving Mr. Porter, and having Mr. Graham go into the matter, you and Mr. Porter arrived at any conclusion— any settlement? A. After some length of time. I don't remember the figures any more that we agreed to take; Mr. Graham's figures of compromise were, I think, $10,000—about $10,000. Q. As I understand you, you agreed that the account in the sum of $10,000 was the balance due? A. I think they rendered an account to us—Mr. Porter's figures—the gas company's figures, ran either $14,000 or $17,000, and Mr. Graham's figures, taking the pumpage, and what we had used previously, and allowing an increase for the increased pumpage, which carries more steam, of course, Mr. Graham made a figure that we finally agreed on; I think they agreed upon Mr. Graham's figures and our figures. Q. In the sum of $10,000? A. Yes. Q. Do you know whether or not anything was paid on this credit balance of $10,000? A. Yes. I think I O. K.'d two or three bills of $1,000 each."

This shows an exercise by Mr. Younkman of the authority conferred upon him by sec. 9, supra, to audit the claim. That his action was ratified and approved by the board of commissioners is shown by the fact that two installments of $1,000 each were paid on this claim, which could not otherwise have been paid under the provisions of said section 9. As to why the remaining $8,000 of this compromise settlement was not paid is disclosed in the further testimony of Mr. Younkman:

"Q. And after that, payment was suspended on these $1,000 installments, was it? A. Yes, sir; we couldn't meet the bills on account of breakage and incurred expense at the plant that we didn't foresee when we acknowledged this debt. Q. That is to say, the money which you contemplated would be devoted to this debt, and applied to this debt, was applied to repairs on the plant? A. Yes, sir."

This latter testimony also disposes of defendant's second contention, to wit, that it was not shown that any appropriation was ever made or that any sum of money was ever available for the payment of these claims. The fact that funds made available for payment of plaintiff's claims were diverted and used to meet unexpected exigencies which arose cannot militate against plaintiff's right to recover on claims valid when audited and allowed in the manner authorized by the city's charter. Buxton & Skinner Stationery Co. v. Board of Commissioners of Craig County, 53 Okla. 65, 155 Pac. 215.

Upon a consideration of the whole case it is concluded that no reversible error has been shown in the action of the trial court overruling defendant's demurrer to plaintiff's evidence, and the defendant having elected to stand upon its demurrer to plaintiff's evidence, the trial court was correct in rendering judgment in favor of plaintiff for the amount of its several claims with accrued interest. The judgment should be affirmed.

By the Court: It is so ordered.