No. 3469

Second Circuit

AMERICAN DISINFECTING CO. v. POLICE JURY OF GRANT PARISH

(January 21, 1929.   Opinion and Decree.)
(March 12, 1929.   Rehearing Refused.)

Williams and Williams, of Colfax, attorneys for plaintiff, appellee.

Cleveland Dear, of Alexandria, attorney for defendant, appellant.

ODOM, J. In June, 1926, the sheriff of Grant Parish purchased 120 gallons of Dyo Concentrated Disinfectant and other materials from the plaintiff company to be used in disinfecting the courthouse and jail, and had the same charged to the police jury. The bill was presented to the police jury, and it refused to pay it. This suit followed.

The police jury resists the action on the ground that the sheriff purchased the disinfectants without its sanction or authority, and that the sheriff had no authority to bind the parish. Elaborating its answer, the police jury averred that in April, prior to the purchase of the goods by the sheriff in June, it adopted a resolution and had it published in the official journal, notifying all officials of the parish not to purchase anything for the parish without the approval of the police jury, and further, notifying all persons who had theretofore sold supplies to such officers that it would not be responsible for such bills unless approved. There was judgment in the lower court for plaintiff and defendant appealed.

OPINION.

The testimony shows that the sheriff purchased these disinfectants in the name of the parish and had the bill charged to it. The goods were promptly shipped to the parish, and received by the sheriff, and used by him in disinfecting the courthouse and jail. It is shown that the police jury had given the sheriff no specific authority to purchase the goods. However, it is clear that, in making the purchase, the sheriff followed the custom which had prevailed in the parish for many years, that is, of purchasing what supplies he needed to keep the jail and courthouse in a sanitary condition and having the bills charged to the police jury. Not only had this custom prevailed as to the sheriff, but other officers had always purchased what they needed for their departments and had the bills charged to the parish. So far as the record discloses, the police jury had never required any officer to obtain specific authority to purchase what supplies he needed.

With reference to the supplies purchased by the sheriff, the testimony shows that the police jury had sanctioned and ratified his actions in making such purchases by paying the bills without question. It had adopted and made the sheriff's acts its own in such matters, and this was recognized by the commercial world. Up to the time this bill was presented to the police jury, it had never repudiated any account made by the sheriff for supplies for the jail, or for anything else purchased for the parish. From 1915 to 1926, the sheriff had purchased from the plaintiff in this case more than $2,000 worth of disinfectants for the jail and courthouse, without any specific authority from the police jury, and each bill was approved and paid by the police jury without question.

But, in April, 1926, the police jury decided that some of the officers of the parish, including the sheriff, were rather extravagant in their purchases, and that, in the interest of economy, it was advisable to have each order presented to and approved by the police jury, or its representative. Accordingly, on April 6, 1926, the jury adopted a resolution notifying all the officers of the parish that all orders for supplies must thereafter be approved by that body, and further notifying all persons who had theretofore made sales to the parish upon orders given by the officers, that such orders must first be approved by the jury, otherwise, they would not be paid. This resolution was published once in the official journal of the parish. At the time of the publication, the sheriff was out of town in a sanitarium and did not see the published notice, and knew nothing of it. He purchased the goods in question in June following. The plaintiff had no actual notice of the change in the method of dealing adopted by the police jury, and knew nothing of the resolution until November following, when the clerk of the police jury sent to it a certified copy of the resolutions. But the disinfectants had long since been shipped to, and received by, the sheriff, and were then being used by him.

In addition to the point that the sheriff had no authority to purchase the goods for the parish, counsel for the police jury argues that the publication of the resolution in the official journal of the parish was sufficient notice to plaintiff, under the law which provides that the publication of laws in the official journal is notice of their passage.

But we do not think the publication of the resolution in this instance was sufficient notice to the plaintiff, which is a foreign corporation domiciled in the state of Missouri, nor do we think the police jury considered it sufficient notice, because we find that, four months after the adoption and publication of said resolution and notice, the clerk of the police jury, presumably at the suggestion of that body, sent to the plaintiff a certified copy of said resolution, accompanied by a check in payment of a previous bill, and a letter specifically reciting that "hereafter" no bill against the police jury would be paid, unless previously approved by that body. Besides this, the resolution referred to is not in any sense a law or an ordinance. In its preamble it is recited that, "whereas it appears that numerous purchases have and are being made by various parties without authority, * * * therefore be it resolved that we, Police Jury of Grant Parish, * * * go on record disfavoring such a practice, and that all persons selling anything whatever to any parties without the approval of said Police Jury as a body be, and they are hereby notified that their accounts and invoices will not be paid by the said Police Jury, * * *." It is therefore plain that said resolution was never intended as anything more than a mere notice of a change in the system which had theretofore prevailed. Mr. Warner, secretary-treasurer of the police jury, was asked whether or not the plaintiff company had specific notice of said resolution, and he said:

"A. I sent them a check I think it was in October or November 1926, and notified them at that time that *hereafter* before making any sales or shipment of any stuff purchased by anyone not having authority from the Police Jury, they would have to look to the party or parties making the purchase for the payment as the Police Jury was in no way responsible for purchases made *after that time*, and at the same time sent them a certified copy of the resolution."

From this, we infer that the police jury recognized that foreign creditors should have specific notice of the change of method. But this was about four months after these goods were shipped and delivered, and after they had been partially consumed.

The police jury understood that the sheriff was responsible for sanitary conditions in the jail and courthouse, and had always left it to him to purchase what he needed, and had paid for what he purchased. Mr. Pope, president of the jury, was asked:

"Q. Mr. Pope, is it not a fact that the Police Jury trust the management—control and the sanitary condition of the Court House and Jail to the Sheriff?

"A. Well, it has been my understanding tha the Sheriff was supposed to look those matters.

"Q. The Police Jury recognizes that the Sheriff was the man to keep the condition in a sanitary manner around that Court house and Jail, is that a fact?

"A.. Yes, sir."

Act 251 of 1918 prescribes sanitary regulations for jails, and section 7 thereof makes it the duty of the sheriff to enforce these regulations.

It is not denied that it is the duty of the parish to provide and pay for disinfectants for the jail. Supplies for that purpose are almost as necessary as food and clothing for the prisoners. The sheriff testified that, for some time during his tenure of office, the toilets in the jail were not connected with sewers, and that it was difficult to keep the place fit for human habitation, even with the use of disinfectants. The police jury had never at any time delegated to any special individual authority to make purchases of supplies for the jail, but always left that matter to the sheriff, and had approved and sanctioned his acts by paying the bills without question.

Under such conditions, the police jury cannot escape the payment of the bill in question on the technical ground that the sheriff had no authority to bind the parish. It had constituted the sheriff its agent for making purchases of such necessary supplies by sanctioning and ratifying his conduct in that respect. It would be wholly unfair and inequitable to permit the parish to repudiate this debt on the technical ground that the sheriff had no authority to make the purchase, and as a matter of law, it cannot do so. It is equitably estopped from denying the agency.

"The doctrine of estoppel involves apparent or ostensible agency, which exists where the principal intentionally, or by want of ordinary care, induces third persons to believe another to be his agent, although he did not in fact employ him." 31 Cyc. 1236.

"Ratification of the acts of an agent need not in most cases be express, but may be implied from the acts and conduct of the principal, and generally speaking a ratification may be implied from any acts or conduct on the part of the principal reasonably tending to show such an intention on the part of the principal to ratify the acts or transactions of the alleged agent, particularly where his conduct is inconsistent with any other intention, or where it appears that he has repeatedly recognized and approved similar acts done by the agent." 31 Cyc. 1263.

This estoppel applies to parochial and municipal corporations, as well as to private individuals, where the acts of the agent are not ultra vires the powers and duties of such corporations. 28 Cyc. 465. See Volume 3, La. Digest, p. 92, Sec. 29.

In the case of Moore vs. New Orleans, 32 La. Ann. 726, Judge Fenner, the organ of the Court, said on page 744:

"The doctrine of estoppel is unquestionably subject to some important restraints and qualifications in its application to public corporations; but such juridical persons are not emancipated from those great duties imposed by the law of nature, recognized in every system of morals and religion, and consecrated in universal jurisprudence among which those most elementary are the injunctions, *honeste vivere, suum cuique tribuere,* and that no one shall be permitted to enrich himself at the expense of his neighbor."

In Booth vs. City of Shreveport, 29 La. Ann. 581, the court held, to quote the syllabus:

"The consent of a municipal corporation to a contract may be as effectually given by the action or inaction of the common council, as by a formal resolution of the council."

In a case note found in L. R. A. 1915A, p. 1006, it is stated:

"A public corporation may likewise estop itself to deny the validity of a contract within the general scope of its powers, but not regularly entered into, by having in the same manner entered into other similar contracts and recognized the validity thereof."

In support of this general rule, there is cited the case of Barnard vs. Sangamon County, 190 Ill. 116, 60 N. E. 109, holding that:

"Where a contract was within the charter powers of a municipal corporation, it is estopped to deny the authority of its clerk to enter into it in its behalf, where it has previously permitted its clerk to enter into similar contracts and has recognized the validity thereof."

While counsel have filed written statements, setting forth in a general way their respective contentions, neither has cited a single authority in support of those contentions. Pressed for time as we are, confronted constantly with a heavy and badly congested docket, it is quite a burden, upon the members of this court to have to brief the authorities without assistance from the members of the bar. However, "Hope springs eternal!" May we yet be blest!

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be affirmed, with costs in both courts.