Hillsborough, }
May 5, 1936. }

JOHN W. STORRS *v.* MANCHESTER.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* and *Aloysius J. Connor* (*Mr. Wyman* orally), for the defendant.

ALLEN, C. J. The city's director of public works accepted a proposal of the plaintiff to engage him on a commission basis as consulting engineer for the construction of two bridges. After the plaintiff commenced his work the mayor notified him that the director had no authority to contract for the service in the city's behalf in such manner and advised him that any work he did in the matter would be at his own risk. The plaintiff then interviewed the director who requested him to proceed with the work. The plaintiff's testimony is full of conflict upon the issue whether the request was in confirmation of the contract or constituted a cancellation of it with an engagement on new terms.

The jury were instructed that if the plaintiff's services were rendered pursuant to the original contract, he could not recover, but if he was reëngaged for services to be rendered in assistance to the director and under the latter's orders, and the city accepted them, he was entitled to the value of the benefit the city received from them. It is the part of the verdict returned under this instruction that was set aside.

The instruction barring recovery based upon the original contract was correct. By the statute (Laws 1917, c. 350, s. 4) a contract for "the performance of any work" required the mayor's approval, as one condition. *Wellman* v. *Reilly*, 81 N. H. 389.

The effect of the instruction was also to bar the plaintiff from recovery of reasonable compensation for his services and of allowance for his expenses. The value of benefit accruing to and accepted by the city was the only theory of damages submitted. This restriction necessarily was predicated on a view that any reëngagement of the plaintiff by the director was as much invalid as the original contract. The jury's verdict, being for the plaintiff, involves a finding of re-

engagement to take the place of the contract. They were instructed to find for the city if the services were rendered under the contract.

In considering the right of recovery under the theory adopted, the preliminary question whether recovery would lie regardless of the conditions of acceptance of the services by the city and benefit to it therefrom, requires examination.

Assuming an abandonment of the contract and a reëngagement for the services, the reëngagement was the employment of an agent with no agreed price to be paid for the services which might be rendered thereunder. The law above cited vests the director with "authority to employ, appoint or hire . . . agents . . . and other persons as he may deem expedient." (s. 4). But this authority, although sole and uncontrolled, is to be exercised only in conformance with the act and under the restrictions the act contains. It is provided by the act that the commissioners of the department shall "fix a minimum and maximum scale of wages for each grade or relative position (hereinafter provided for) subject to the approval of the mayor." (s. 3). And the director is to establish "a schedule of grades or relative positions to include all . . . agents . . . and all other persons" employed in carrying on the work of the department. (s. 4.)

These extracts from the act are to support its evident general scheme that substantial financial control of the department was to be reserved in the mayor. All contracts for supplies and work require his approval, all appropriations are to be expended by the director with such approval, and all bills and payrolls are to receive his approval before they are paid.

The director has no voice in fixing the wage scale, in respect to its limits. Since it extends to any service in the department, the conclusion follows that he has no authority to bind the city for any engagement of service not within some range of payment therefor promulgated by the commissioners and receiving the mayor's approval. He may not employ service until others have determined how much and how little he may pay therefor, and then only within the range thus fixed.

While the mayor may not supervise the director's control and conduct of the department, it is his duty to oversee its financial management. The act designs that the director shall have no free rein in incurring expense or using appropriations. The cost of whatever is proposed to be done must receive the mayor's consent before liability therefor is created, at least within the fixed limits.

The reëngagement of the plaintiff, as found by the jury, implied

as one of its terms that he was to receive fair and just allowance for his services and expenses. The record contains no evidence of any scale of payment within a fixed range established for the "relative" nature of service the plaintiff performed. Until one was established the director was no more authorized to engage service with no price agreed upon for it than when the price was agreed. If he might employ service for reasonable compensation, leaving open determination of the amount, it would tend to weaken the aim of the statute to reserve financial control. Obviously the director lacks authority to engage service for which no limits of pay have been fixed. The fact that the service is to be rendered for an indefinite time and irregularly during its course does not alter the engagement in a manner to make it authorized.

The plaintiff rendered services under the director's orders during a period of four or five months, charging at the rate of $5 an hour therefor and in addition for his expenses. He is a civil engineer of standing. Calling his charge proper in amount, on a basis of a six hour day for a three hundred working day year, it was at an annual rate of $9,000, omitting expenses. To hold that the act allowed the director to employ agents on such terms, free from all interference and control, would be a construction by which a result meant to be guarded against and avoided would be permitted.

If until the limits of the wage scale are fixed the director may assume the right to say that they are left to him to determine, he would have delegated to him an unexercised duty of others. The statute may be read to such effect with no escape from the result that the right would oppose and be in conflict with its plan of financial control. And the provision that no appropriation shall be expended without the mayor's approval would also be disregarded.

The conclusion is reached that the director had no more authority to engage the plaintiff as the jury found he did than under the original contract.

The statute set forth the limits of the director's authority. He was in no way held out to indicate that he had a broader authority. The plaintiff was not entitled, as against the city, to rely on the director's asserted or assumed exercise of authority not possessed. The confines of his actual authority marked all that would render the city liable for anything he did. The question of apparent authority therefore does not arise. *Smith* v. *Epping*, 69 N. H. 558.

Upon the theory that the plaintiff may recover the value of benefit from service not duly engaged, the facts do not furnish any equitable

ground necessary to support it. A moral duty to pay does not connote an enforceable obligation. Some specific principle or situation of which equity takes cognizance must be the foundation for the validity of the claim. *American University* v. *Forbes, ante,* 17.

The situation here may be regarded from the standpoints of both parties in determining its effect to produce legal rights and duties. The plaintiff was not hired by the city. He has no superior standing of acting in good faith. The city's good faith was equal to his. It did not mislead him. As already appears, the law treats him as though he had notice that the director lacked authority to engage him as an agent of the city. He therefore is in no better position than if he had actual knowledge that the city made no request for the services he furnished. In furnishing the city services it did not request he stands as a volunteer, and he acted at his own risk. Am. Law Inst: Restatement of Restitution, Proposed Final Draft, *ss.* 2, 112.

Considering the benefit derived from the service to have value, it was of an intangible nature, consisting of advice, information, and other assistance to the director. No liability exists merely for benefit received. It must be accepted or adopted, and receipt alone does not signify acceptance. Passive inaction is insufficient. Some positive appropriation is required. *Ernshaw* v. *Roberge,* 86 N. H. 451, 454, 455.

If an election to return cannot be made as a reasonably practical matter, retention and use do not constitute acceptance. One is not required to pay for favors forced upon him or for advantages placed in his hands which under the circumstances and situation he is not fairly called upon to return. If the benefit and use may not be avoided, either because return is not possible or because the return would result in loss of other property or interests, payment therefor may not be justly demanded. "In most cases where work and labor is performed upon real estate by contract, the mere fact that the owner makes use of the building, or structure built upon his land, furnishes no evidence of approval or acceptance, because he has no choice to reject it." *Wilson* v. *District,* 32 N. H. 118, 125.

The plaintiff was not entitled to expect that the city would be required to pay for the service unless with a fair option of choice it saw fit to accept it or its benefits and make use of them. No property of his has been retained by the city and no restoration of anything he has furnished is possible. There being nothing bargained for and restitution not being available, there is neither original nor subse-

quent promise on which to predicate liability. The situation is one created and brought about by the plaintiff. Not promised or misled by the city, he may not hold it to make good any mistake inducing him to the conduct resulting in the benefit. The city is under no estoppel to deny liability. The case is to be classified with those of unrequested favors the benefit of which implies no acceptance importing a promise to pay for them.

If the city had been in a position to accept and had exercised its choice to do so, the acceptance would have been a ratification of the engagement of the service. Retention and use of the benefits would be conduct in confirmation of the engagement, which would thus be a contractual undertaking of the city with obligation to pay for the fair worth of the service. *Keyser* v. *District*, 35 N. H. 477; *Rich* v. *Errol*, 51 N. H. 350; *West* v. *Errol*, 58 N. H. 233; *Rockwood* v. *District*, 70 N. H. 388. Also, conduct during the performance of the service indicating its acceptance is a ratification. *Lucier* v. *Manchester*, 80 N. H. 361. In *Skinner* v. *Manchester*, 72 N. H. 299, recovery was allowed for services requested and performed under a contract not shown to have become terminated, and the case is no authority for liability for unrequested service.

In cases where money has been paid under an *ultra vires* contract, the payee's appropriation of the money to its own uses is held to create a debtor and creditor relation. The retention and use amount to a special agreement to repay. *Cogswell* v. *Bank*, 59 N. H. 43; *Connecticut &c. Bank* v. *Fiske*, 60 N. H. 363, 369, 370; *Norton* v. *Bank*, 61 N. H. 589; *Manchester &c. Railroad* v. *Railroad*, 66 N. H. 100; *Abbott* v. *Bank*, 68 N. H. 290. But there must be such appropriation. *Smith* v. *Epping*, 69 N. H. 558; *Downing* v. *Company*, 40 N. H. 230; *Hilliard* v. *Railroad*, 77 N. H. 129; *Pollard Auto Co.* v. *Nashua*, 80 N. H. 233. So far as *Wadleigh* v. *Sutton*, 6 N. H. 15 is inconsistent with the cases herein cited, they have had the effect of overruling it.

The law on the subject as herein declared is believed to be in accord with that generally prevailing. Dillon, Mun. Corp's., (5th *ed.*,) *ss.* 797-799; 19 R. C. L. 1074, 1075; 44 C. J. Mun. Corp's., *ss.* 2226-2229; 1915 A, L. R. A. 1036.

During the time the services were rendered and afterwards the city took no action in approving their engagement or in accepting any benefit derived from them. No one representing the city in official capacity and right to approve or accept did so. The director, without authority to engage the services, was without authority to accept

their benefit.   He had no right to acquire it at the city's expense.   He had no authority to ratify his own unauthorized conduct in engaging the services.   The statute does not contemplate its circumvention by permitting liability for the value of benefits from the services if he accepted them, when it had denied him authority to engage the services out of which the benefits arose.

The city officials who might ratify took no steps and pursued no course indicating confirmation of the plaintiff's engagement.   So far as appears, they had but slight knowledge of the services while they were being rendered, and none that they were not being rendered under the original contract.   Neither then nor later did they do anything to lead to an inference that they approved and sanctioned any arrangement modifying the original one.   Whether approval could be given without formal compliance with the statutory requirement that a wage scale be adopted for such work as the plaintiff performed, does not need decision.

*Exception overruled.*

All concurred.