578

**CROWN PIPE & FOUNDRY, INC., Plaintiff, v. DAVIS, Treasurer of Jackson County, Ohio et, Defendants.**

Common Pleas Court, Jackson County.

No. 16318. Decided January 23, 1960.

David G. Howell, for plaintiff.
Roy J. Gilliland, County Pros., for defendants.

## OPINION

By MITCHELL, J.

This cause came on to be heard upon the petition of the plaintiff, Crown Pipe & Foundry, Inc., the answer and cross-petition of the defendants, the Recorder, the Auditor and the Treasurer of Jackson County, Ohio, and lastly the answer by the plaintiff to the cross-petition of the defendants. The parties hereto have agreed and have submitted the case for decision upon an agreed statement of facts which are filed herein.

The petition in this cause states in essence that beginning in 1932 through 1958 the records of the Treasurer and Auditor of Jackson County,

Ohio, showed delinquent and unpaid personal property taxes in the name of the plaintiff company or one Dwight Jones or both and that said tax assessments for such periods were unlawful because of the failure of the County Auditor to follow the procedure as set forth in §5719.04 R. C., which is the same section as former §5694 GC. The petition prays that the purported tax liens created by these assessments be declared null and void and cancelled as of record.

To this petition the defendants filed an answer and a cross-petition in which they admitted the existence of the unpaid taxes, admitted the existence of the lien and further admitted that the procedure set forth in §5719.04 R. C., had not been followed. The defendants then alleged in their cross-petition that the tax duplicates of this County show that from the years 1932 through 1946, and from 1953 through 1958, there are unpaid personal property taxes charged against the plaintiff which are due and unpaid and in the total amount of $21,489.81. The cross-petition further requests judgment against the plaintiff in this amount.

The plaintiff answered this cross-petition by denying that the tax duplicates had been legally prepared according to law and further denying that he owed the sum of $21,489.81 in personal property taxes.

Of course, the basic issue before the Court is whether or not the Crown Pipe & Foundry, Inc., owes any personal property taxes and, if so, how much. The facts submitted by agreement show that the Crown Pipe & Foundry Co., as a corporation, was instituted in 1905 and went into receivership in 1926 and the receivership was administered by the Common Pleas Court of Jackson County, Ohio. In April 1940, this Court ordered the Treasurer of this County to set up any unpaid personal property taxes against the company so that the receivership could be terminated. No claim was submitted by the Treasurer and the Court held in its final order that any such prior taxes were to be invalid and the Treasurer was enjoined from attempting to collect the same. That order of the Common Pleas Court is binding upon the County of Jackson and no taxes against this company can be collected prior to 1940 for the above reason. In 1940 one Dwight Jones obtained control of the company. Apparently from 1940 to 1949 the tax duplicates show some personal property taxes unpaid and some paid. It is significant to note, however, that on November 30th, 1949, Dwight Jones filed with the Secretary of State a certificate of dissolution showing the dissolution of the company. As part of those dissolution proceedings a certificate was signed and filed by the Auditor of Jackson County, Ohio, and the Treasurer of Jackson County, Ohio, which in substance reads as follows: ". . . . we do hereby certify that all personal property taxes due and owing from the Crown Pipe & Foundry Co., Inc. are paid in full to date.". It would seem, therefore, that either this certificate or the duplicates of this County are incorrect as they pertain to taxes on or before 1949. The question is, can the County, subsequent to this certificate of the Treasurer and Auditor, assert its alleged tax lien for years prior to 1949 or is it estopped from setting up such a claim. There is no question but that the doctrine of estoppel does not extend to County officials with the same force and effect as it does to individuals.

This is because the powers of Counties and their officials arise completely by statute. Agents and officials of the State and of Counties have no apparent authority and, therefore, the doctrine of estoppel as it applies to them is limited to those matters in which the officials have been expressly authorized to act.

In this case, however, the Auditor and Treasurer were those officials who were expressly authorized to keep and maintain the records of real and personal property taxes and to know who had paid and who had not paid their taxes. Who else would or could possibly know whether a personal property tax had been paid but these two officials, therefore, individual taxpayers do rely and have the right to rely upon the records and certificates to show these amounts correctly and it would not be proper for the County, many years later and in this case after the company had changed hands, to claim that its own certificate was incorrect.

Up to this point it has been unnecessary to discuss the effect of §5719 et seq, R. C., because for the reasons given above, this County cannot go back of the year 1949 to collect any unpaid personal property taxes from this company.

It is noted from the pleadings and the agreed statement of facts that no claim is made by the County for the years 1950, 1951 and 1952. It also appears that from the year 1953 through 1959 personal property tax returns were filed every year by the Crown Pipe & Foundry, Inc. The agreed facts also show that in 1958 and 1959 the personal property taxes were paid. Therefore, the remaining years in issue in this case are the years 1953 through 1957, a period of five (5) years. From the agreed statement of facts it would appear that under normal circumstances the company would have paid upon the filing of these returns the total sum of $10,852.57 in personal property taxes during this period of time. There is no satisfactory explanation as to why the taxes were not paid except we may surmise that the company was in financial difficulty as it ceased its active operation in 1956. The company is now planning to reopen its operation, to borrow capital and is faced with the alleged personal property tax lien. The company claims that it should not have to pay these taxes because the County did not follow the procedure set forth in §5719.04 R. C. i. e.:

No. 1—Maintain the proper and necessary tax duplicates

No. 2—Did not advertise the delinquent list yearly as required by the statute

No. 3—Did not create a cumulative delinquent list and deliver one annually to the Treasurer and the Recorder.

The plaintiff maintains that, therefore, no valid lien was created and that it should not have to pay the taxes for the years in question. The position of the County as set forth in its cross-petition is that even assuming the invalidity of the tax lien can be established, the plaintiff still owes personal property taxes which should be paid. There are numerous sections of the Revised Code that deal with the taxation of personal property. **Chapter 5711 R. C.**, is entitled "Listing Personal Property" and §§.01 through .21 list the requirements of setting forth

the property in the returns and who is required to make a return. There is no question but what the plaintiff corporation falls into the category of those corporations who must file a return between the 15th of February and the 31st day of March each year. All personal property including intangible property must be listed. The Crown Pipe & Foundry, Inc. recognized this obligation because it did file the necessary returns for the years in question. It merely failed to pay the amounts listed on the returns. There is no claim in this case that the amounts listed in the returns were incorrect or that there was any additional assessment made that was incorrect. At the time of the filing of these returns no objection was made to the assessment of the tax or the manner in which the duplicates were kept.

The next question that arises is how does the failure to pay the tax affect the County's right to collect these delinquent amounts. **Chapter 5719 et seq, R. C.,** is entitled "Collection of Taxes." **Sec. .04** provides in part that the County Auditor each year after the October settlement shall prepare duplicates of unpaid current and delinquent personal property taxes; shall cause the same to be published twice within a sixty (60) day period; also the Auditor must deliver by December 1st to the County Recorder the other duplicate of delinquent personal property taxes and the same shall constitute, after such publication and delivery, notice of a lien on the lands and tenements of the taxpayer. **Sec. .06** requires the Auditor and Treasurer's tax lists to be kept cumulative so that the total delinquent and current tax may be shown on the latest duplicate.

Admittedly, in this case, the County Auditor has failed to comply with the requirements of publication in §.04 and the requirements of the preparation and delivery of the duplicates to the County Recorder. Also, no cumulative duplicates have been kept. What is the effect of this failure to comply with §§.04 and .06 upon the lien which is set forth in §.01. There are very few reported cases on the precise issue. In this Appellate District there have been two unreported Common Pleas Court decisions. Case No. 30988, entitled Marcus Reitz, Executor of the Estate of Simon Reitz v. H. H. Hopkins, Treasurer of Lawrence County, Ohio, was decided by Judge Collier. There is no reported opinion in the case but the Journal Entry of the Court recites in part: ". . . . The court further finds upon the evidence that H. H. Hopkins as Treasurer of Lawrence County cannot collect the assessment against said estate . . . . for the reason that the delinquent personal and classified property tax list was not published in a newspaper as required by §5694 GC.". In the case of State, ex rel. James Applegate and Louella Applegate v. Ray A. Vastine, Case No. 45039, in the Common Pleas Court of Scioto County, the Court in its Journal Entry found that the duplicate list of delinquent personal property taxes had been filed with the Recorder but had not been published as required by law. That Court held that the purported personal property tax lien could not therefore operate as a valid lien upon the real estate of the decedent and thus obtain a priority of payment over other liens from the proceeds of sale of real estate of the decedent.

In the case of **Klein v. Clark, 59 O. O. 286,** Judge Barhart of Lawrence

County also held that publication of the delinquent list was necessary in order to constitute a valid lien . . . in that case upon the proceeds of a sale of real estate by a receiver. Some of the language of the Court in that case is significant, however.

". . . . It might be well to dispose of certain so-called liens which are in the opinion of the Court not liens at all and thereby eliminate said claims from this estate, realizing of course that **they will still be entitled to share as general creditors.**"

"There is no dispute about the amount due, but in my opinion, there is serious doubt as to whether these personal property taxes constitute a lien on these premises"

"This case must be distinguished from the cases where the County Treasurer has undertaken to foreclose on property for the non-payment of personal property taxes, the Courts having held in those cases that publication of the list is not mandatory since the defendant received a summons as provided by law and therefore has notice of the pendency of the suit."

In the opinion of this Court there is no doubt but what the lien is invalid if not properly perfected.

Proper notice to the taxpayer by publication and the delivery of the duplicates to the County Treasurer and County Recorder and the maintenance of a cumulative delinquent duplicates list are all essential ingredients of the perfection of this lien. These acts not being properly performed in this case, the purported lien of personal property taxes is hereby declared to be null and void according to the prayer of the petition.

The remaining and more difficult issue in the case is presented by the cross-petition of the defendants praying for judgment against the plaintiff for delinquent personal property taxes due to the County. In other words what becomes of the basic obligation of the debt owed to the County by the filing of a tax return which shows tax to be due, but which is unpaid not only for the current year, but for five (5) years prior, i. e., 1953 through 1957. Does, as the plaintiff claims, the invalidity of the lien make it impossible by civil suit or, in this case by cross-petition, to collect the debt?

It appears that the maintenance of records of the collection of personal property taxes has been a problem for County Auditors for several years. The nature and extent of the requirements of §5694 GC, now §5719.04 et seq, R. C., have not been carried out in many counties. In fact the Court is informed that the State Auditor's office does not even have cumulative duplicate forms as mentioned in the statute and the Blank Book Companies do not print the same. Be that as it may, however, the statute does set forth certain requirements for County officials to follow. However the Court feels that the failure of the County Auditor or other officials to comply with the statute would not estop the State from collecting an otherwise valid obligation. The discharging of the lien and the discharging of the obligation are two separate and distinct matters. What would prevent the Couny Auditor from bringing his delinquent tax list to date, publishing it, and then filing

a civil suit to collect the tax due. In fact in the Scioto County case of Applegate v. Vastine, supra, the Court in its entry ordered that very procedure to be followed. Also, Judge Earhart in the case of Klein v. Clark indicated that in his opinion the County would still be entitled to participate in the receiver's assets as a general creditor. Therefore, in his opinion the obligation was not discharged. In that case, as in this case, there was no dispute as to the amount due nor is there any claim here that the assessment is in the wrong amount or on the wrong property. The plaintiff prepared and filed his own returns for the years in question and his own figures were accepted by the County as the amount due. The defect of lack of notice by publication would not be available in a civil suit to foreclose property since the defendant would receive notice in the form of service of summons. In this case the tax-payer originated the suit to invalidate the lien and, therefore, cannot complain of a lack of notice when the defendants filed their cross-petition setting up the debt.

The only Supreme Court case close to being in point is **The Aetna Company v. Ginder, 114 Oh St 52.** That case was an action by the Treasurer of Franklin County to collect delinquent taxes from the defendant company for past years. The Treasurer tried to introduce duplicates of past years into evidence and the Court held that these books were not properly prepared and were not competent evidence. There was considerable question in that case of the times and method of making the entries in the duplicates in question. The ruling in the case was specifically directed to the admissibility of the duplicates as evidence, the validity of the tax itself was not in issue. In fact the Court stated in the last paragraph of the case: "We are not intending to hold that these taxes may not now be collected.". There is no similar problem of evidence in this case. This case is submitted upon an agreed statement of facts. The Treasurer and Auditor and Recorder are all parties to the action. The validity of the returns is not in question. The case of **Hull v. Alexander, 69 Oh St 75,** which was one of the earliest Supreme Court decisions involving the statute in question, holds that a Treasurer cannot maintain an original action on past duplicates not in his possession and upon which settlement has been made between him and the Auditor. The Treasurer is only required to collect taxes on the duplicates in his hands for collection. However, in that case the Court specifically refrained from ruling whether or not the delinquency could then be placed on the duplicates, advertised and collected. That case can be distinguished from the case at bar on its facts. The sole issue which this Court must decide is whether or not the failure to comply with the requirements of §5719.04 R. C., would, in itself, prevent a judgment upon an otherwise admittedly valid obligation. I think not. The precedent of allowing a taxpayer upon the set of facts in this case to escape his obligation to support the community by the payment of his taxes upon the grounds alleged is obvious. If technical mistakes of County officials would estop the County and State Governments from collecting valid tax obligations and invalidate the basic obligation to pay taxes, then County Governments would be flooded with claims.

584

In summary, the Court holds that the tax lien for the years 1932 through 1957 is invalid but that the taxpayer in this case owes delinquent personal property taxes for the years of 1953 through 1957 in the amount of $10,852.57 for which judgment is hereby rendered upon the cross-petition.