Charles NOTTINGHAM, Appellee,

v.

CITY OF YUKON, Oklahoma, a municipal corporation, Appellant.

No. 66245.

Supreme Court of Oklahoma.

Nov. 15, 1988.

As corrected Nov. 16, 1988.

Rehearing Denied Jan. 18, 1989.

**974**

Ramey, Biehler, Miller & Flanagan by Fenton R. Ramey and Patricia A. Flanagan, Yukon, for appellant.

Miller & Associates by Ray E. Zschiesche, Yukon, for appellee.

HODGES, Justice.

The issue presented is whether a city manager has either the express or implied authority to settle and compromise an employee's claim of wrongful demotion. We hold that the city manager lacked authority to settle and compromise an employee's claim under the Yukon City Charter.

Appellee, Charles Nottingham (employee), was employed by the City of Yukon as a captain in the fire department. In March, 1981, he was demoted from the rank of captain to the rank of firefighter because he drove a fire truck to the grocery store to pick up his lunch. When the city manager gave the employee the choice of being fired or being reduced to the rank of firefighter, he chose a reduction in rank.

At trial, the employee alleged that his attorney and the city manager entered into an oral contract in which the firefighter agreed to forego his wrongful demotion claim against the city in exchange for reinstatement as captain. The City of Yukon claimed that the city manager was not authorized to bind the city in a settlement and compromise agreement with the employee.

Because the statute of limitations had run, the trial court dismissed the firefighter's claim for wrongful demotion. His claim asserting breach of a settlement and compromise agreement was submitted to an advisory jury on March 4, 1986. The jury returned a verdict for damages in the amount of $50,446.00 and recommended the firefighter be reinstated to the rank of captain retroactively to August 1, 1984. The trial court allowed the employee to elect damages or specific performance. The employee chose money damages and attorney fees from which the City of Yukon appeals.

Municipal officers have only such powers and can exercise only such authority as are expressly granted or necessarily to be inferred as incidental to those expressly granted. *City National Bank v. Incorporated Town of Kiowa*, 104 Okl. 161, 230 P. 894 (1924). The Yukon City

Charter is silent concerning whether the city manager is authorized to settle and compromise claims. The trial court ruled that the city manager was so authorized. We now reverse.

The Yukon City Charter authorizes the municipality to settle and compromise claims presented or filed against it incident to its power to sue or be sued.[1] However, the fact that a municipality may compromise a claim does not automatically give that authority to municipal officers. All powers of the city, not otherwise delegated, are vested in the city council.[2]

■ Employee attempts to characterize the agreement as an employment contract citing the city manager's authority over personnel matters.[3] This characterization is incorrect. It ignores the fact that the employee remained employed with the Yukon Fire Department from 1969 through the trial of the case and beyond. Clearly the parties were attempting to settle and compromise employee's wrongful demotion claim.

■ While the Yukon City Charter grants the city manager the power to administer city government, this authority does not include the power to settle and compromise the claims of city employees. The agreement was not an employment decision. It was not, as employee asserts, incidental to the city manager's administrative power to hire and fire. Thus, the agreement was not binding on the City of Yukon.

This result is required by *Oklahoma City v. Miller*, 190 Okl. 234, 122 P.2d 807 (1942). In *Miller*, an injured employee alleged a binding contract with the City of Oklahoma City as a result of the city manager's oral promise to pay compensation. The Court noted that any recovery was premised on the existence of a contract executed by the proper officers. Nothing in the city charter was found to give the city manager the authority to make such a contract. 190 Okl. at 236, 122 P.2d at 809. In denying recovery, the Court held the promise "amounted to nothing more than a verbal assurance on the part of the manager ... and in no wise constituted a valid or binding contract between the plaintiff and defendant." *Id.* The Court's decision in *City of Muskogee v. Senter*, 186 Okl. 174, 96 P.2d 534 (1939), was cited for the proposition that neither the mayor nor the city manager possessed the authority to bind the city to a contract not approved by the city council in the absence of a charter provision delegating that authority.

■ In the absence of some contrary provision, power to compromise a claim is lodged with the legislative branch of a municipality. *City of Fairmont v. Hawkins*, 304 S.E.2d 824 (W.Va.1983). Matters of legislative concern, such as the assertion of the city's legal rights, should be addressed by the city council, not the city manager. Approval of the agreement by the city council was required by the city charter's reservation of this power to the legislative branch of the municipality.

The Yukon City Manager acted in excess of his statutory authority by attempting to

1. The Yukon City Charter provides that "[t]he city shall have power to adopt a corporate seal and to alter it at pleasure, to sue and to be sued, and to make contracts." Yukon, Okla. Charter, § 3.

2. Section 7 of the Yukon City Charter provides that "[e]xcept as otherwise provided in this charter, all powers of the city, including the determination of all matters of policy, shall be vested in the council."

3. The powers and duties of the Yukon City Manager concerning employment matters are as follows:

   The city manager shall be chief executive officer and head of the administrative branch of the city government. He shall execute the laws and ordinances and administer the government of the city, and shall be responsible therefor to the council. He shall:
   (1) Appoint, and when deemed necessary for the good of the service, lay off, suspend, demote or remove, all directors, or heads, of administrative departments and all other administrative officers and employees of the city, except as he or the council by ordinance may authorize the head of a department, an officer or an agency to appoint, lay off, suspend, demote and/or remove subordinates in such department, office or agency, subject to such merit system regulations as the council may adopt;
   . . . .
   Yukon, Okla. Charter, § 22.

settle and compromise a wrongful demotion claim. As this Court has noted:

> Whoever contracts with a municipality does so with notice of the limitations on its or its agents' powers. Everyone is presumed to know the law, and whoever contracts with such municipality or furnishes it supplies does so with reference to the law; if such persons go beyond the limitations imposed, they do so at their own peril.

*Independent School District v. Howard,* 336 P.2d 1097, 1098 (Okla.1959) (quoting *Consolidated School District v. Panther Oil & Grease Manufacturing Co.,* 197 Okl. 66, 168 P.2d 613 (1946)). Employee's claim of wrongful demotion was a legal matter and not part of the administrative powers of the city manager. The oral agreement by an officer unauthorized to compromise and settle an employee's claim did not bind the municipality.

In view of our holding, it is unnecessary to discuss the other arguments asserted for reversal of the trial court's decision. The judgment of the trial court is reversed.

HARGRAVE, V.C.J., and LAVENDER, SIMMS and SUMMERS, JJ., concur.

OPALA, J., concurs in part, dissents in part.

DOOLIN, C.J., and ALMA WILSON and KAUGER, JJ., dissent.

KAUGER, Justice, with whom DOOLIN, Chief Justice joins dissenting.

There are three kinds of authority under which a city manager may settle and compromise an employee's claim for wrongful demotion—express, implied and apparent authority. Because the city was estopped to deny the appearance of authority with which it cloaked the city manager to settle and compromise the employee's claim, a more detailed discussion of the facts is necessitated.

Charles Nottingham, (employee/appellee) was employed by the City of Yukon as a captain in the fire department. In March, 1981, he was demoted from the rank of captain to the rank of firefighter because he drove his fire truck to the grocery store to pick up his lunch. When he was confronted concerning this by the city manager, Nottingham argued that earlier in the day his superior officer also had taken the fire truck to the grocery store without penalty. Nevertheless, when the city manager gave the employee the choice of being fired or being reduced in rank to the firefighter, he chose a reduction in rank.

The facts become disputed at this point. The employee alleges that his attorney and the city manager entered into an employment contract, in which the firefighter agreed to forego his lawsuit against the city for the wrongful demotion in exchange for reinstatement as captain on or before August 1, 1984. (The date is significant because of the calculation of the rate of retirement pay.) The City denies the existence of the contract and in the alternative, asserts that the contract was unauthorized and not binding on the City.[1]

Because the statute of limitations had run, the trial court dismissed the firefighters claim for wrongful demotion. His claim asserting the breach of a settlement agreement and of a compromise agreement was submitted to an advisory jury on March 4, 1986. The jury returned a verdict for damages in the amount of $50,446.00 with a recommendation that the firefighter be retroactively reinstated to the rank of captain effective August 1, 1984. The trial court announced that it would follow the advisory recommendation allowing an election of remedies. The employee accepted the money damages of $50,446.00, and he was awarded attorney fees from which the City appeals.

## UNDER THE YUKON CITY CHARTER, THE CITY MANAGER HAD THE APPARENT AUTHORITY TO BIND THE CITY IN A COMPROMISE AND SETTLEMENT CONTRACT

The City contends that the city manager lacked the authority to contract with the

---

**1.** The city manager, at the time of the alleged agreement, stated in a letter to the employee's attorney that he would make an effort to increase the employee's retirement benefits eligibility in any way he could, provided it could be done legally and ethically.

employee to settle and compromise his claim for wrongful demotion. The employee argues that the city manager can contract with city employees and that such agreements are binding on the City. Because the city charter is silent concerning whether the city manager possesses the express authority to enter into contracts in order to compromise and settle claims,[2] and because implied authority includes only the powers that grow out of express powers which are necessary to the general course of conduct and do not include special circumstances,[3] we must determine whether the doctrine of apparent authority applies to a municipality.

Under the doctrine of apparent authority, the principal, here the City, must consent to the exercise of authority by its agent, or knowingly permit an agent to exercise authority. The person dealing with the agent, must know of the facts concerning the contract including the agency relationship, and, acting in good faith, have reason to and actually believe that the agent possessed authority to enter into the contract.[4] The most commonly stated prerequisites for the doctrine's application are that the

agent's act be within the constitutional or statutory powers of the municipality, and that there be no duly recorded limitation giving actual or constructive notice of the agent's authority. The powers of municipalities and the scope of their agents' authority are often matters of public record accessible to third persons dealing through those agents. While the doctrine of apparent authority has been found to be applicable to municipal corporations by a number of jurisdictions,[5] some cases seem to support the view that although a municipality may, in a proper case, be estopped to deny the actual authority of its agents, the doctrine of apparent authority is not applicable to municipal agents.[6]

A municipality, like a private corporation, is subject to the doctrine of estoppel.[7] It may be estopped to deny the authority of its agents and employees to act if it has the power to, and by its conduct does, clothe an agent with the appearance of authority. However, it cannot be bound for an act of its agent in excess of its corporate powers, or in violation of positive law, or for an act requiring legislative or executive action.[8]

---

2. Yukon, Okla. Charter, § 22 (1959) which provides in pertinent part:

"The city manager shall be chief executive officer and head of the administrative branch of the city government. He shall execute the laws and ordinances and administer the government of the city, and shall be responsible therefor to the council. He shall:

(1) Appoint, and when deemed necessary for the good of the service, lay off, suspend, demote or remove, all directors, or heads, of administrative departments and all other administrative officers and employees of the city, except as otherwise provided by this charter, and except as he or the council by ordinance may authorize the head of a department, an officer or an agency to appoint, lay off, suspend, demote and/or remove subordinates in such department, office or agency, subject to such merit-system regulations as the council may adopt; ..."

3. R.V. Smith Supply Co. v. Stephens, 169 Okl. 555, 37 P.2d 926, 929 (1934).

4. Wheeler v. Puritan Ins. Co., 720 P.2d 729, 731 (Okla.1986); Ivey v. Wood, 387 P.2d 621, 625 (Okla.1963).

5. State v. O'Connell, 83 Wash.2d 797, 523 P.2d 872, 890, 77 A.L.R.3d 874, 896 (1974); Ervin v. City of Pittsburgh, 339 Pa. 241, 14 A.2d 297, 301

(1940); Storrs v. City of Manchester, 88 N.H. 139, 184 A. 862, 864 (1936); Bridgepoint Brass Co. v. Drew, 102 Conn. 206, 128 A. 413, 416 (1925); S. Goldberg & Co. v. City of Cedar Rapids, 200 Iowa 139, 204 N.W. 216–17 (1925); Mottin v. Board of Comm'r, 89 Kan. 742, 133 P. 165, 168 (1913); The Mayor and City Council of Baltimore v. Reynolds, 20 Md. 1, 10 (1862); Am. Disinfecting Co. v. Police Jury of Grant Parish, 10 La.App. 389, 120 So. 135, 137 (1929).

6. Town of Tempe v. Corbell, 17 Ariz. 1, 147 P. 745, 747 (1915); Crown Pipe & Foundry, Inc. v. Davis, 82 Ohio L.Abs. 578, 167 N.E.2d 390, 392 (1960); Wilke v. City of Ballinger, 31 S.W.2d 1102–03 (Tex.Civ.App.1930).

7. Burdick v. Indep. School Dist., 702 P.2d 48, 53 (Okla.1985); S. Nevada Memorial Hosp. v. State, 101 Nev. 387, 705 P.2d 139, 141 (1985); City of Concord v. Tompkins, 124 N.H. 463, 471 A.2d 1152, 1155 (1984); Colorado Water v. Town of Frederick, 641 P.2d 958, 964 (Colo.1982); Albright v. City of Shamokin, 277 Pa.Super. 344, 419 A.2d 1176, 1178 (1980); DeFrank v. County of Greene, 50 Pa.Commw. 30, 412 A.2d 663, 666 (1980).

8. Albright v. City of Shamokin, see note 7, supra; DeFrank v. County of Greene, see note 7, supra; Ervin v. City of Pittsburgh, see note 5, supra;

The general rule is that the doctrine of apparent authority is not as broad when municipal agents, rather than private agents are involved.[9] Although this issue has not been addressed in any of our previous decisions, in *Burdick v. Independent School Dist.*, 702 P.2d 48, 53 (Okla.1985), we found that the application of estoppel principles against a political subdivision would be appropriate when its imposition would further some principle of public policy or interest.

In considering the proper approach to this issue, some courts have differentiated between a municipality's purely governmental or administrative functions and its proprietary functions or business transactions. The rationale is that when a municipality acts like a business, it should be equally subject to liability for acts of its agents within their apparent authority.[10] Among other elements mentioned by the courts as affecting the applicability of the doctrine of apparent authority are: the presence or absence of a provision of law requiring that the authority of municipal officers be given by formal action of the governing body;[11] the actual employment of the agent to make declarations or representations for the municipality;[12] and the municipality's receipt of material benefits as a result of its agent's act of contract.[13]

Here, the city manager, under the Yukon charter,[14] is charged with the appointment, suspension, demotion or removal of all directors, heads, administrative officers and employees of the city. The charter also precludes interference by the city council in the appointment or removal of employees except through the city manager.[15] The principal, City of Yukon, has expressed its consent to the exercise of authority by the City Manager in all employment matters through its charter. When the employee's attorney requested the current city manager to place the matter of the employee's reinstatement to the city council, the city manager mailed the employee's attorney copies of the two sections of the charter which authorize the city manager to handle employment matters. The city manager stated that the city charter expressed how matters of personnel were to be handled, and that he did not need to place the matter before the city council. The employee and his attorney read the indicated charter provisions and reasonably believed that the city manager had the authority to negotiate and to settle the employment dispute.

The City maintains that although the city manager was authorized to handle person-

---

*Storrs v. City of Manchester,* see note 5, supra; *Bridgeport Brass Co. v. Drew,* see note 5, supra.

**9.** *City of Concord v. Tompkins,* see note 7, supra.; *Local 266, Int'l .3hd. of Elec. Workers v. Salt River Project Agricultural Improvement and Power Dist.,* 78 Ariz. 30, 38, 275 P.2d 393, 399 (1954); *Ervin v. City of Pittsburgh,* see note 5, supra; *Ambrozich v. City of Eveleth,* 200 Minn. 473, 274 N.W. 635, 637, 112 A.L.R. 269, 272 (1937); *Johnson v. City of Pendleton,* 131 Or. 46, 280 P. 873, 875 (1929); *Bridgeport Brass Co. v. Drew,* see note 5, supra; *S. Goldberg & Co. v. City of Cedar Rapids,* see note 5, supra; *The Mayor and City Council of Baltimore v. Reynolds,* see note 5, supra; *Crown Pipe & Foundry, Inc. v. Davis,* see note 6, supra; *Wilke v. City of Ballinger,* see note 6, supra; *Am. Disinfecting Co. v. Police Jury of Grant Parish,* see note 5, supra. See also, Annot., "Doctrine of Apparent Authority as Applied to Agent of Municipality," 77 A.L.R.3d 925 (1977).

**10.** *State v. O'Connell,* see note 5, supra; *Ervin v. City of Pittsburgh,* see note 5, supra; *Bridgepoint Brass Co. v. Drew,* see note 5, supra.

**11.** *Mottin v. Board of Comm'r,* see note 5, supra.

**12.** *The Mayor and City Council of Baltimore v. Reynolds,* see note 5, supra.

**13.** *State v. O'Connell,* see note 5, supra.

**14.** Yukon, Okla. Charter, § 22 (1959), see note 2, supra.

**15.** Yukon, Okla. Charter, § 8 (1959) provides: "Neither the council, the mayor nor any of its other members may direct or request the appointment of any person to, or his removal from, office or employment by the city manager or by any other authority, or, except as provided in this charter, participate in any manner in the appointment of removal of officers and employees of the city. Except for the purpose of inquiry, the council and its members shall deal with the administrative service solely through the city manager; and neither the council nor any member thereof may give orders on administrative matters to any subordinate of the city manager either publicly or privately."

nel matters, he did not have the authority to bind the city in a compromise and settlement contract. This argument contravenes *City of Tulsa v. Oklahoma Natural Gas Co.*, 109 Okl. 43, 234 P. 588, 590 (1925), in which we held that the water commissioner had the authority to bind the city in a compromise agreement because of his authority to audit accounts and claims against his department.[16] The commissioner's action was ratified by the board of commissioners as required by the charter. In this case, the council is not required to ratify the city manager's employment decisions. The officers of a municipal corporation have the powers and the authority which are expressly granted by law or necessarily to be inferred as incidental to the execution of those powers.[17] I would find that the city manager did, under the doctrine of apparent authority, bind the city in the settlement and compromise contract, and I would answer the other questions posed on appeal.

16. See also Annot., "Power of City, Town or County or their Officials to Compromise Claim," 15 A.L.R.2d 1359, 1390 (1951).

17. *Newblock v. Bowles,* 170 Okl. 487, 40 P.2d 1097, 1100 (1935); *City Nat'l Bank v. Inc. Town of Kiowa,* 104 Okl. 161, 230 P. 894, 897, 39 A.L.R. 206, 211 (1924).