BARNETTE, Judge.
The plaintiff, Motion Picture Advertising Corporation (MPA), brought suit for recovery of $1,920.95 against the Board of Commissioners of the Orleans Levee District (Levee Board) for production of a certain three-minute color movie film in accordance with an alleged agreement with defendant. Judgment was rendered in plaintiff’s favor as prayed and defendant has appealed.
The pertinent facts out of which the disputed account arose are summarized as follows :
Alex Vuillemot, the owner of an advertising and public relations agency, for some time prior to 1965 had rendered services in the line of his business to the Levee Board. Most of his contacts with the Levee Board were with Alan Citron, who was employed on contract by the Levee Board in the capacity of consultant in matters relating to public relations and advertising. He was constantly seeking methods to improve the public image of the Levee Board. Citron’s employment and duties were admitted by Milton Dupuy, president of the Levee Board who was the only witness to testify in its behalf.
In February 1965, Citron and Vuillemot discussed the production of a short movie film to present the functions of the Levee Board to the public. Citron wrote a script and submitted it first to Dupuy, who made a few suggestions for change and told Citron to get a price on it. Vuillemot submitted the script to plaintiff (MPA) through its vice president and production manager, Robert W. Dyer, who gave an estimate of approximately $2,200. Vuillemot obtained *565 Citron’s approval and told Dyer to carry on from there with Citron.
There was no specific price submitted to Dupuy, but there was a general understanding that the production would cost approximately $2,000. Dupuy insists that he never gave specific authorization to obligate the Levee Board but that he approved the plan subject to his reservation of right to accept or reject the production when completed. There can be no question that Dupuy was fully apprised of the entire matter because he personally participated in production and directed the cooperation of his staff and employees of the Levee Board.
After completion of the film and its exhibition to Dupuy, he requested certain changes in the narration. These changes were made by MPA. There is a dispute among the witnesses as to whether Dupuy expressed his satisfaction or dislike for the production. After the requested changes were made he refused to view the film or have anything further to do with the matter.
At the conclusion of trial, the trial judge immediately ruled from the bench:
“Well, Mr. McGovern, I don’t see there is need for much argument. It seems to me this is a clear case where the employees or agents — you can call them employees being agents or both — Mr. Citron and Mr. Vuillemot were employed by the Levee Board. There’s no denying that fact. And they both acted as agents of the Levee Board in dealing with the Motion Picture Advertising Corporation. Now, if they exceeded their authority, then the Levee Board of course has an action against them. Mr. Dupuy has testified he didn’t communicate at any time with the Motion Picture Advertising Corporation to indicate to them that they had additional contract. He knew it was going to cost somewhere between fifteen hundred and two thousand dollars. And the bill is nineteen hundred dollars. It seems to me Motion Picture Advertising Corporation and the Levee Board, they have a case. The Levee Board can, as I say, can go after their agents and employees if they had exceeded their authority. Mr. Dupuy had full knowledge of the fact the picture was being made and at no time he testified he told the Motion Picture Advertising Corporation they were making a picture subject to his acceptance. He told that to his employees, but they never conveyed that to the Motion Picture Advertising Corporation. That’s my view of it. I think the plaintiff made out his case.”
In overruling a motion for a new trial, the trial judge in his “Reasons for Judgment” said in part:
“Whatever Mr. Dupuy may have told his employees and agents as to his intention not to accept the picture if it did not meet with his approval, this information was not imparted either by him or his agents and employees to the plaintiff, and when Mr. Dupuy appeared at the plaintiff’s studio and proceeded with plaintiff’s camera crew to take part in the making of the moving picture, the plaintiff certainly had every reason to believe that whatever agreement they had reached with the Levee Board’s employee and agent had the approval of Mr. Du-puy. It would be inconceivable for them —or anyone else — to be so naive as to feel that Mr. Dupuy was under the impression that the plaintiff was to make the picture without cost to the Levee Board.
“After having made the picture, plaintiff was told by the same employees and agents of defendant that Mr. Dupuy did not like the finished picture and wanted a professional to narrate the film in lieu of its having been narrated by Mr. Du-puy. This the plaintiff then agreed to do, and apparently did do, and is apparently now ready and willing to furnish the finished picture with such corrections as was ordered by the Levee Board’s agents.”
*566 We thoroughly concur in the findings of fact of the trial judge. There is no other issue before the court.
LSA-C.O. art. 2277 provides as follows:
“All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, about five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances.”
Clearly the plaintiff has carried its burden of proof.
The following language in Neiman-Marcus Company v. Viser, 140 So.2d 762, 765 (La.App.2d Cir. 1962), is relevant to the issue in this case:
“Our conception of the law is that, when one clothes another with apparent authority to act for him, insofar as a third party is concerned, he will not be permitted to deny that fact; that is, where a person, by his acts or conduct, has knowingly caused or permitted another to appear as his agent to the injury of third persons, who have dealt with the apparent agent in good faith and in the exercise of reasonable prudence, he will be estopped to deny the agency. Cason v. Cecil, 194 La. 41, 193 So. 362; American Disinfecting Co. v. Police Jury of Grant Parish, La.App.2d Cir., 1929, [10 La.App. 389] 120 So. 135; Miller v. Hammond Motors, La.App.lst Cir., 1949, 40 So.2d 29; D. H. Holmes Co. v. Terry, La.App.Orleans, 1952, 58 So.2d 840 ; 2 C.J.S. Agency § 29b, p. 1036. The principal is, therefore, bound by the engagements contracted by his agent or mandatary conformably to the power confined to him (LSA-C.C. Art. 3021). * * *”
The facts here are even stronger than in the Neiman-Marcus case in that the principal, through its president, actually participated in the production of the movie contracted for by its agents without notice to the plaintiff of any limitation of the agents’ apparent authority.
The judgment appealed from is affirmed at appellant’s cost.
Affirmed.