**EDUCATION SERVICE CENTER OF OKLAHOMA, INC., Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT I–1 POTTAWATOMIE COUNTY, a/k/a McLoud Public Schools, Appellee.**

No. 85414.

Court of Appeals of Oklahoma, Division No. 4.

Oct. 22, 1996.

Certiorari Denied Jan. 15, 1997.

---

Bill V. Wilkinson, Wilkinson Law Firm, Tulsa, for Appellant.

Karen L. Long, Rosenstein, Fist & Ringold, Tulsa, for Appellee.

*MEMORANDUM OPINION*

REIF, Judge.

This appeal arises from a suit by Education Service Center of Oklahoma, Inc., seeking payment for services rendered to the McLoud Public Schools under a contract signed by the Public Schools' superintendent. There was no dispute that the superintendent contracted with Education Service Center to prepare an application for federal funding known as Impact Aid, and that Education Service Center prepared the application. There also was no dispute that Public Schools received more Impact Aid as a result of the application than had been received the previous year. The controversy concerned the superintendent's authority to enter into this contract which provided that Education Service Center would be paid a preparation fee and a percentage of any increased amount of Impact Aid procured by the application.

School Board denied that the superintendent had authority to contract for the application preparation, despite its resolution designating the superintendent as School Board's agent to apply for the Impact Aid and other federal funding. School Board also claimed that it did not know of the contract with Education Service Center, despite approving payment of the preparation fee upon a purchase order requisition submitted by the superintendent. The jury returned a verdict in favor of Public Schools and the trial court entered judgment on the verdict. The trial court also awarded Public Schools its attorney fees and costs.

Education Service Center appeals the judgment on the verdict and the award of attorney fees. Upon review, we agree with the contentions of Education Service Center that the trial court erred in refusing its

request for instructions on (1) implied authority of an agent, and (2) acceptance of benefits of a contract as consent to obligations.

In support of the verdict, School Board relies on *Sears v. Board of Education*, 271 P.2d 319, 320 (Okla.1954) (citation omitted), for the proposition that "[a] legal and binding contract against a school district can be made only by its board of education in regular session." School Board also cites *Nottingham v. City of Yukon*, 766 P.2d 973, 976 (Okla.1988), for the related proposition that "[w]hoever contracts with a municipality does so with notice of the limitations on its or its agents' powers." *Nottingham*, in turn, relies on a case that quotes from *Consolidated School District v. Panther Oil & Grease Mfg. Co.*, 197 Okla. 66, 168 P.2d 613, 615 (1946) (per curiam), where the court held that the "superintendent is not authorized to enter into contracts and bind the board."

While these are correct general principles of law, they are not without exceptions. In *City of Haileyville v. Smallwood*, 441 P.2d 388, 392 (Okla.1968), the defendant-city sought to avoid the relief requested by the plaintiffs under the rule that "persons dealing with a municipality do so at their own risk and with notice of limitation on the powers of a municipality or its agents." In rejecting the applicability of this rule, the court stated:

> [I]n the instant case, defendant has not contended that it lacked the power to contract with plaintiff. Rather, it contends that plaintiff must show the authority of its agents who allegedly made the contract. It is obvious from the evidence herein that defendant is willing to admit the authority of its agents in accepting the fruits of their labors, but just as obviously wishes to deny their authority in entering into any other agreement necessary to obtain the conveyance of the 110 acre tract. In our opinion, it would be inequitable under the circumstances herein to allow defendant to deny the agency of any person shown to have negotiated for the tract or the power of any such agent to enter into the alleged agreements.

A similar view was expressed in a case involving a school board's liability for legal services for which formal board approval had not been obtained. *Doyle v. School District No. 38*, 30 Okla. 81, 118 P. 386, 387 (1911), reversed both a justice court and district court judgment that had denied the plaintiff-attorneys recovery for services rendered, because "the contract of employment between said district and plaintiffs, [was] not ... made at a regular, or called, meeting of the school district board." The supreme court stated that "to permit this school district to accept the services, and reap the benefits of the successful efforts of plaintiffs ... and then refuse to pay for the same simply on the ground that no binding contract had been made prior to the rendition of said services ... is abhorrent to our sense of justice and fair dealing." *Id.* at 388.

*Doyle* was later followed in *Board of Education v. News Dispatch Printing & Audit Co.*, 117 Okla. 226, 245 P. 884 (1926). In this case, two members of the school board entered into a written contract for auditing services with News Dispatch outside of a formal board meeting. At the next regular meeting, the contracting members informed the third board member of the contract and obtained his approval. They advised him, however, that the work would not cost more than $75.00, when they had agreed to pay $15.00 per day. In affirming a directed verdict for News Dispatch, the court observed that there was "[n]o contention ... that the two members of the board, who executed the contract, did not understand the terms and conditions of the contract, and no fraud nor mistake is alleged." *Id.* at 885. As concerns the failure of the two members to fully advise the third member when the contract came up for approval, the court stated that "it was the duty of the third member of the school board to have examined the contract in question and to have become acquainted with its terms before attempting to consider and approve the same in a regular meeting, and his dereliction in this respect cannot be invoked by him nor by the board to defeat the contract." *Id.*

*News Dispatch* was later followed in *C & C Tile Co. v. Independent School District*

*Number 7,* 503 P.2d 554 (Okla.1972). In *C & C Tile,* one of the parties contended that the school district superintendent did not have authority to enter into a loan trust agreement because it was not sanctioned by the board of education. Citing *News Dispatch,* the court held that "[e]ven without an official board meeting, if proper officers of a school district officially enter into a written contract the school district will be deemed to have ratified it and be bound thereby if it receives and retains the full benefits." *Id.* at 560.

■ Lastly, even *Nottingham* recognizes that public officials possess authority to act that is necessarily inferred as incidental to authority that is expressly granted. The contract in *Nottingham* was not enforced because it was a contract to settle a wrongful termination claim which the court said was a legislative concern completely outside the public official's authority over "personnel matters." 766 P.2d at 975.

■ Without proper instructions that an official possesses authority necessarily inferred as incidental to express authority given and the binding effect of acceptance of the benefits of a contract, we conclude that the jury was misled into believing that the contract in question was not valid because it lacked formal School Board approval. Under the foregoing authority, formal School Board approval was not required because (1) the contract was one the school district was otherwise empowered to make; (2) the contract was made by a "proper officer" in carrying out the express authority he had been given to obtain the very benefits that the contract ultimately achieved; (3) the contract was entered into in good faith without hint of fraud, mistake or lack of understanding of its terms; (4) the existence of the contract and the receipt of services thereunder were disclosed to School Board through a purchase order submitted by the contracting official; (5) partial payment under the contract was approved without inquiry by School Board; and (6) the school district received and retained the benefits of the contract.

The reversal of the judgment on the jury verdict necessitates the vacation of the attorney fee award. Insofar as the other propositions raised by Education Service Center are concerned, we find no error by the trial court in excluding the testimony of the superintendent and the other school employee on the matters that were inquired about, but we do find error in admitting the policy for making emergency or necessary expenditures. This policy is irrelevant and is to be excluded in the event of a new trial.

The judgment on the jury verdict is reversed, the award of attorney fees and costs is vacated, and this case is remanded for further proceedings.

JUDGMENT REVERSED; ATTORNEY FEE AWARD VACATED; AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.

RAPP, C.J., and TAYLOR, P.J., concur.