2007 OK CIV APP 116

**G.E. CAPITAL INFORMATION TECHNOLOGY SOLUTIONS, INC., Plaintiff/Appellee,**

v.

**OKLAHOMA CITY PUBLIC SCHOOLS, Independent School District No. I–89 of Oklahoma County, Oklahoma, Defendant/Appellant.**

**No. 103,213.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 1, 2007.

Michael D. Gray, Britton, Ramsey & Gray, PC, Oklahoma City, OK, for Plaintiff/Appellee.

F. Andrew Fugitt, Stephanie J. Mather, The Center for Education Law, Inc., Oklahoma City, OK, for Defendant/Appellant.

JANE P. WISEMAN, Judge.

¶1 Defendant, Oklahoma City Public Schools, Independent School District No. I–89 of Oklahoma County, Oklahoma (District) appeals from (1) an order of the trial court granting summary judgment in favor of plaintiff, G.E. Capital Information Technology Solutions, Inc. (G.E.); (2) a separate order awarding G.E. $263,648.17 in damages; and (3) an order awarding attorney fees to G.E. After a review of the record and pertinent law, we affirm its decisions in part and reverse and remand in part.

## FACTS AND PROCEDURAL BACKGROUND

¶2 G.E.[1] filed its petition against District to collect balances due on thirteen lease agreements for photocopying machines and related equipment and services. District filed its answer denying liability and asserting that the lease agreements were void and unenforceable pursuant to Article 10, § 26 of the Oklahoma Constitution and 70 O.S. Supp. 2006 § 5–117(B). G.E. later filed an amended petition, which added a claim for *quantum meruit.* District did not file a responsive pleading to the amended petition.

¶3 Both parties filed motions for summary judgment. District did not dispute that employees at various schools in the District signed the lease agreements. In his deposition, District's deputy senior finance officer, Belphry Dean (Dean), formerly the Director of Purchasing, testified that it was District's practice during the relevant time period of 1997 to 2000 to allow its employees to contract for copiers and maintenance services with vendors such as G.E. using activity funds available from the individual schools.[2]

---

1. The lease agreements were entered into between District and IOS Capital, Inc., G.E.'s predecessor-in-interest. IOS filed the original petition. After G.E. was substituted as the plaintiff, G.E. filed an amended petition. For clarity, both IOS and G.E. will be referred to as G.E. in this opinion.

2. Specifically, Dean testified as follows:
 Q. And it's your understanding that if you were a principal and that you elected to sign a copy contract for either the rental or the supplies, that until such time as it was approved at the school board level or some level, that the money would have to be paid at the local school?
 A. That's correct.
 Q. And how long has that been the circumstance in Oklahoma City?
 A. As long as I can remember.

District also admitted that it used the copiers for purposes consistent with the operation of a public school district.

¶ 4 District, however, denied that its Board of Education (Board) was aware of or had ever approved or ratified the leases. District also denied that the Board authorized any payments on the leases or that the applicable statutory accounting procedures had been followed. It further argued that because the leases did not contain the requisite contractual provision for mutual ratification of renewal pursuant to 70 O.S. Supp.2006 § 5–117(B),[3] the lease agreements were void and unenforceable. District returned only six of the thirteen copiers and was unable to locate the remaining copiers.

¶ 5 The evidentiary materials attached to G.E.'s motion for summary judgment demonstrated that during the lease terms, the Board regularly issued checks, signed by the Board president, Board clerk and district treasurer, for the monthly rental obligations to G.E. G.E. also presented a memorandum from Dean that specifically directed District's employees to honor all copier contracts with G.E.[4]

¶ 6 In direct response to District's claim of lack of mutual ratification of renewal provisions, G.E. produced an affidavit from Stephen Young (Young), a recovery analyst for G.E., which stated that each lease agreement contained a non-appropriation rider. Attached to G.E.'s response to District's motion for summary judgment were non-appropriation riders for each of the thirteen leases, which Young stated "were previously overlooked when the thirteen (13) lease agreements were removed from their files in preparing this lawsuit for filing."

¶ 7 The trial court granted G.E.'s motion for summary judgment, stating that "(a) the contracts were partially performed; (b) the Defendant School District received the bene-

fits of Plaintiff's performance; and (c) [t]he Plaintiff received partial payments on each of the contracts." The court scheduled a hearing to determine the amount of damages.

¶ 8 At the hearing on damages, G.E. presented evidence that it sustained damages totaling $263,648.17. Damages with respect to the lease agreements covering copiers that were returned to G.E. were based on the accelerated balance of unpaid rent through the end of the original lease term, less a credit for any proceeds derived from the sale of the copiers. Damages relating to the lease agreements covering copiers that were not returned to G.E. were calculated based on holdover rents up through the date of trial pursuant to clauses in the leases that provided that after the initial term, the agreements automatically renewed on a month-to-month basis unless written notification was given.

¶ 9 District did not offer exhibits or witnesses to refute G.E.'s evidence, relying instead on its pleadings and prior arguments that "the leases were void from the outset." In closing argument, District stated that, if the trial court were to uphold its original ruling that the leases were valid, it would only stipulate to damages in the amount of $19,007.06, an amount based on District's contention that it was responsible only for lease payments in a fiscal year in which a payment was made.

¶ 10 At the conclusion of the damages phase, the trial court entered judgment for G.E. for the total amount requested, $263,648.17. G.E. then filed its motion for attorney fees and costs, which the trial court granted in an amount less than that requested by G.E.

¶ 11 District appeals from each of the orders of the trial court.

---

**3.** Title 70 O.S. § 5–117 has been amended numerous times since 1997, but these amendments have not affected the substantive portions of subsection (B) applicable here.

**4.** Dean testified that at the time the memorandum was sent to District employees, he was Director of Purchasing or the Purchasing Manager and that he had authority to authorize the

employees to honor their obligations. His testimony, in relevant part, is as follows:

 Q. Is there any understanding of yours that a direction to the principal to honor an obligation would be outside your authority as Purchasing Manager?
 A. No.

## STANDARD OF REVIEW

¶ 12 The standard of review on the entry of judgment granting summary relief is *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. The appellate court enjoys "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. We "examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact" and view the facts and all reasonable inferences arising therefrom in "the light most favorable to the non-moving party." *Carmichael*, 1996 OK 48 at ¶ 2, 914 P.2d at 1053. Statutory construction presents a question of law, which we also review *de novo*. *Arrow Tool & Gauge v. Mead*, 2000 OK 86, ¶ 6, 16 P.3d 1120, 1123.

¶ 13 In a non-jury trial, "the trial judge's determination of the facts bears the force of a verdict rendered by a well-instructed jury. It must be affirmed if supported by any competent evidence." *Bradley v. Clark*, 1990 OK 73, ¶ 3, 804 P.2d 425, 427. "Whether a contract has been ratified presents a question of fact." *Kincaid v. Black Angus Motel, Inc.*, 1999 OK 54, ¶ 11, 983 P.2d 1016, 1020.

¶ 14 Finally, we review an award of attorney fees under an abuse of discretion standard. *Oklahoma Tpk. Auth. v. Little*, 1993 OK 116, ¶ 6, 860 P.2d 226, 228.

## ANALYSIS

### I. The Leases

¶ 15 District, citing *Independent School District No. 1, McIntosh County v.*

*Howard*, 1959 OK 17, ¶ 6, 336 P.2d 1097, 1098, correctly points out in its brief that "[i]n any case involving contractual undertakings with an Oklahoma governmental entity . . . one who contracts with a public body does so with notice of and subject to the limitations on the powers of the public body or its agents." Both the Oklahoma Supreme Court and this Court, however, have recognized valid exceptions to general principles of contract law relating to school districts and boards of education.

¶ 16 In *Education Service Center of Oklahoma, Inc. v. Independent School District I–1 Pottawatomie County*, 1996 OK CIV APP 127, 932 P.2d 37, plaintiff, a consulting company, entered into a contract with McLoud Public Schools to provide services regarding preparation for an application for federal funding. The superintendent of the school district signed the contract. *Id.* at ¶ 1, 932 P.2d at 38. The school board denied the superintendent's authority to contract for such services even though the school board had previously approved a resolution designating the superintendent as the school board's agent for the particular application for which plaintiff and superintendent contracted. *Id.* at ¶ 2, 932 P.2d at 38. The school board also denied knowledge of the contract despite having approved payment of a purchase order submitted by the superintendent requesting payment of the plaintiff's fee. *Id.*

¶ 17 This Court began its analysis in *Education Service Center* by noting the general principles of contract law relating to school districts and boards of education, but also by recognizing valid exceptions to these principles. Based on its review of applicable case law [5], the Court stated the following:

5. The following is a summary of the cases discussed in *Education Service Center*, 1996 OK CIV APP 127 at ¶ 10, 932 P.2d at 40, which recognized "that an official possesses authority necessarily inferred as incidental to express authority given and the binding effect of acceptance of the benefits of a contract."

In *City of Haileyville v. Smallwood*, 1968 OK 80, 441 P.2d 388, a grantor of certain property filed suit to cancel the warranty deed for failure of consideration and to quiet title to the property in grantor. The Court noted that the city, the grantee, was willing to admit the authority of its

agents in accepting the benefits of their labor but then attempted to deny the agents' authority in their efforts to enter into another agreement to obtain conveyance of the property. *Id.* at ¶ 26, 441 P.2d at 392. As a result, the Court stated, "In our opinion, it would be inequitable under the circumstances herein to allow defendant to deny the agency of any person shown to have negotiated for the tract or the power of any such agent to enter into the alleged agreements." *Id.* Similarly, in the present case, District admits that at the time these leases were executed, the general practice was for individual schools to

[F]ormal School Board approval [of the contract] was not required because (1) the contract was one the school district was otherwise empowered to make; (2) the contract was made by a "proper officer" in carrying out the express authority he had been given to obtain the very benefits that the contract ultimately achieved; (3) the contract was entered into in good faith without hint of fraud, mistake or lack of understanding of its terms; (4) the existence of the contract and the receipt of services thereunder were disclosed to School Board through a purchase order submitted by the contracting official; (5) partial payment under the contract was approved without inquiry by School Board; and (6) the school district received and retained the benefits of the contract.

*Id.* at ¶ 10, 932 P.2d at 40.

¶ 18 District attempts to distinguish this holding by stating that the individuals here who signed the leases did not have authority to do so, that there were no purchase orders created and therefore no proof that the Board was aware of the leases, and that

there was no evidence that the Board authorized payments on any of the leases. District's own witness' testimony, however, shows otherwise. While Dean may have admitted that individual schools generally do not have the authority to enter into contracts without Board approval, the facts show that this was the accepted practice for "as long as [Dean] can remember." Dean directed the schools to honor these contracts and acknowledges that, as Director of Purchasing, he had the authority to make such an order.

¶ 19 District's position that the Board never approved or ratified the leases is also refuted by Dean's testimony that before checks are issued, the Board must approve the entire encumbrance and does not approve invoices payment by payment. Specifically, he testified, "Once the board has approved the encumbrance, that approves the process to go ahead and do the payment.... Once the encumbrance has been approved, then that's the extent of their approval." G.E. presented evidence that the Board issued more than $115,000 in checks for payments on the lease agreements at issue dur-

---

contract with vendors like G.E. and further admits that the schools were subsequently directed by Dean, who claimed he had proper authority, to honor all agreements with G.E. District cannot now be seen to deny such authority.

In *Doyle v. School District No. 38, Noble County*, 1911 OK 333, 118 P. 386, a majority of the members of the board of education hired the plaintiffs to represent the school district in certain actions pending against the school district in the district court of Noble County. The school district accepted the benefits of the representation but then refused to pay on the basis that the contract was not made at a regular meeting of the school board. *Id.* at ¶ 3, 118 P. at 388. The Oklahoma Supreme Court ordered judgment in favor of the plaintiffs, reasoning as follows:

[T]o permit this school district to accept the services, and reap the benefits of the successful efforts of plaintiffs ... and then refuse to pay for the same simply on the ground that no binding contract had been made prior to the rendition of said services, and the failure to make such formal contract, as in the case at bar, being occasioned by reason of the carelessness of the school district officials to meet formally and make a record of the same, is abhorrent to our sense of justice and fair dealing.

*Id.*

In *Board of Education v. News Dispatch Printing & Audit Co.*, 1926 OK 268, 245 P. 884, two of the three members of the town's board of education entered into a contract with News Dis-

patch to provide auditing services to the school board. The contract was entered into outside a regular board meeting and at the next regular board meeting was approved by all three members. In affirming a directed verdict for News Dispatch, the Court observed that there was "[n]o contention ... that the two members of the board, who executed the contract, did not understand the terms and conditions of the contract, and no fraud nor mistake is alleged." *Id.* at ¶ 3, 245 P. at 885. Here, District makes no argument that its employees did not understand the terms and conditions of the leases, nor does it allege that fraud or mistake was involved.

In *C & C Tile Co. v. Independent School District No. 7*, 1972 OK 137, ¶ 29, 503 P.2d 554, 560 (superseded by statute on other grounds) the Court held that "[e]ven without an official board meeting, if proper officers of a school district officially enter into a written contract the school district will be deemed to have ratified it and be bound thereby if it receives and retains the full benefits." Clearly, District in the instant case received and retained the benefits of the lease agreements with G.E. It used the equipment and services and then failed to pay all sums due and owing under the agreements. Even if the exact statutory channels were not followed by District's employees in executing, submitting for approval, or paying on the leases, District's actions demonstrate its intent to ratify the agreements.

ing the course of the leases. Each check was signed by the Board president, Board clerk, and district treasurer, indicating that the Board had, in fact, approved the encumbrance either directly or indirectly.

██ ¶ 20 District correctly states that Article 10, § 26 of the Oklahoma Constitution limits the ability of public bodies, including school districts, to pledge revenues of future fiscal years by incurring or creating multi-year contractual financial obligations. The principal issue presented is whether the leases in question are valid and enforceable when examined under the provisions of 70 O.S. Supp.2006 § 5–117(B). School districts are authorized by this section to lease personal property. The specific relevant language provides as follows:

> The board of education of any school district may rent, on a monthly basis, real and personal property, if such items are necessary for the operation of the school, and pay the rental charges for the usage during any fiscal year, or portion thereof, out of appropriations made and approved for current expense purposes during the fiscal year. Any such rental contract extending beyond June 30 of such fiscal year shall be void unless it contains provisions for mutual ratification of renewal pursuant to the conditions provided for in this subsection. It is the intent of this subsection to authorize boards of education to enter into lease contracts but not to incur any obligation against the school district in excess of the income and revenue provided for such purposes for the fiscal year in which such lease contract is operative. Any lease or lease-purchase agreement entered into by any board of education shall state the purchase price of real or personal property so leased. The lease or lease-purchase shall not be extended so as to cause payment of more than the original purchase price of the real or personal property, plus interest not to exceed the legal rate. When the purchase price plus interest has been paid, the property shall belong to the lessee and

the lessor shall deliver a deed or bill of sale to the property to the lessee.

70 O.S. Supp.2006 § 5–117(B).

¶ 21 Although school districts are permitted pursuant to § 5–117(B) to enter into contracts extending beyond the current fiscal year, they may do so only where the contracts contain "provisions for mutual ratification of renewal." In a 2005 Attorney General Opinion, 2005 OK AG 14,[6] the Attorney General was asked to address whether § 5–117(B) authorizes a valid nonappropriation clause in multi-year lease contracts between a school vendor and a school district. The Opinion discusses the difference between a valid nonappropriation clause and a mutual ratification of renewal clause under § 5–117(B).

¶ 22 Because the phrase "mutual ratification of renewal" has not been defined by Oklahoma courts, the Attorney General defined it according to its ordinary meaning as follows: "at least two persons acting to confirm an extension effective for a fresh period." A.G. Opin., 2005 OK AG 14 at ¶ 5. Applying that definition to the phrase as it is used in § 5–117(B) leads to the conclusion that the legislature intended a school district's multi-year contracts with vendors to be effective only for the first year. A.G. Opin., 2005 OK AG 14 at ¶ 6. After that, each party must act to confirm continuation of the contract for another year. *Id.* Specifically, the opinion states:

> The requirement in Section 5–117(B) for an annual mutual ratification of renewal is contrary to the operation of a valid nonappropriation clause.... [A] contract with a non-appropriation clause is automatically renewed for another year if an adequate appropriation is made to fund contract payments for the upcoming year ... whereas Section 5–117(B) does not allow for automatic renewal upon appropriation or otherwise, but instead requires each of

---

6. The Oklahoma Supreme Court has said that an "Opinion of the Attorney General construing a statute has persuasive authority and silence by the Legislature may be regarded as acquiescence or approval of that construction." *House of Realty, Inc. v. City of Midwest City,* 2004 OK 97, ¶ 22, 109 P.3d 314, 320.

the parties to ratify renewal of the contract for each new fiscal year.

*Id.* at ¶ 7 (citations omitted).

¶ 23 In the present case, the leases each contained an addendum styled "Non–Appropriation of Funds." Under this Attorney General's Opinion, a multi-year lease contract with a nonappropriation addendum does not meet the requirements of § 5–117(B) for a valid contract enforceable after the first year. We are persuaded that the Attorney General's Opinion correctly construes the meaning of "mutual ratification of renewal" as used in § 5–117(B). The nonappropriation addenda here are not sufficient to renew these leases after the end of the first fiscal year. The question that remains is whether the parties have acted to ratify or confirm renewal or extension of the leases for each new fiscal year.

 ¶ 24 After the first fiscal year, District did ratify the leases both by continuing to use G.E.'s copiers and services and by making payments according to the lease terms. The Oklahoma Supreme Court recognizes that "[r]atification or adoption has been found in cases where a party: 1) has accepted the benefits of the contract, whether void or voidable 2) with full knowledge of the facts 3) at a time when the accepting party was fully competent and capable of contracting for himself." *Kincaid v. Black Angus Motel, Inc.,* 1999 OK 54, ¶ 11, 983 P.2d 1016, 1020. "Ratification or adoption of a contract may be implied from the acts and conduct of a person receiving the benefits thereof." *Id.* at ¶ 20, 983 P.2d at 1022.

¶ 25 District accepted the benefits of the leases in question, whether void or voidable, by using the copiers and services provided each year. District does not dispute that it used the copiers for purposes consistent with the operation of a public school district, nor does it contend that it was unaware of the facts surrounding the leases. To the contrary, Dean testified that the leases were not being paid due to financial hardships suffered by the District and that, had the leases been up for payment in prior years, the lease payments probably would have been paid.

¶ 26 Further, there is no contention that District was not fully competent or capable of contracting for itself. Dean admitted that District's practice for as long as he could remember was to allow the individual schools to enter into contracts for services and supplies like the ones at issue without getting Board approval first because the schools could begin making payments out of their activity funds. Dean also admitted that the memorandum he sent to the individual schools in 1999 authorized and directed the schools to honor all contracts it had with G.E. and that, as Director of Purchasing, he had the authority to issue such a directive.

¶ 27 By their actions, the parties ratified their renewal of the agreements in question. By District's actions in making payments on the leases and continuing to retain and use the copiers, rather than return them or cancel the contracts, and by G.E.'s actions in continuing to accept payment and provide services each year, the parties mutually confirmed the extensions for each new fiscal year these actions occurred. Mutual ratification is the only conclusion as a matter of law to be drawn from the facts before us.

 ¶ 28 District contends for the first time on appeal that the leases are invalid because they fail to list a purchase price pursuant to § 5–117(B). We decline to address this issue based on the long-standing rule that "this Court will not entertain a theory for reversal advanced for the first time on appeal." *McKinney v. Harrington,* 1993 OK 88, ¶ 5, 855 P.2d 602, 604.

¶ 29 District also asserts as error that, if the trial court granted summary judgment to G.E. on a *quantum meruit* theory, such an award violates the Oklahoma Constitution, Article 10, § 26. Although the judgment does not specify on which theory the trial court found District liable, we need not address this proposition because we have determined that the lease contracts at issue here are not invalid or unconstitutional.

¶ 30 Because District did not brief the issue of whether G.E. satisfied 62 O.S.2001 §§ 361–362, we do not address that assignment of error. *See Perry v. Meek,* 1980 OK 151, ¶ 13, 618 P.2d 934, 938 ("The absence of argument and authorities on a point of error

preserved by a petition in error is deemed abandonment of that point.").

¶ 31 We therefore conclude that the trial court did not err in granting G.E.'s motion for summary judgment or in denying District's motion for summary judgment. A thorough review of the record, examined in the light most favorable to District as the non-moving party, reveals that no genuine issue of material fact exists as to District's liability on the leases.

## II. Damages

¶ 32 Having concluded that use of the leased property, payment, and acceptance of payment during any fiscal year constitute mutual ratification of renewal, we must further conclude that, in reliance on the clear intent expressed in § 5–117(B), this renewal applies only to the remainder of that fiscal year. In its brief, District makes the point that "failure to continue making payments on these multi-year leases cannot be considered indicia of ratification .... [but] would tend to show failure of ratification." We agree. The cessation of payments, coupled with retention of the copiers, establishes default, not ratification, by District. It is undisputed that District ceased making payments on each of the 13 leases and therefore defaulted under the terms of the leases. After the date of default, there is no basis either factual or legal on which to find a mutual ratification of renewal.

¶ 33 Thus, although the trial court's entry of summary judgment in favor of G.E. on the issue of liability based on mutual ratification of renewal of the leases was correct, District may not be held liable under § 5–117(B) for any lease payment obligation past the end of the fiscal year in which payments were made. The trial court erroneously held that District's liability for damages extended beyond that permissible under § 5–117(B).

¶ 34 As to both the 6 copiers returned to G.E. and the 7 copiers not returned, if District made payments on a given lease during any fiscal year and then defaulted on that lease before the end of the fiscal year, District is liable for payments (and any other contractual fees and damages) owed for the balance of that fiscal year. District cannot, however, be held liable for any payments owed for the remainder of the lease term after that fiscal year. Liability for such accelerated payments is prohibited by § 5–117(B) which reflects the protection afforded by Article 10, § 26 of the Oklahoma Constitution. If District defaulted on a given lease in a fiscal year in which no payments were made, there has been no mutual ratification of renewal, and District cannot be held liable for any payments owed and unpaid for that fiscal year or for the remainder of the lease term.

¶ 35 This same analysis applies to those holdover rents beyond the lease term awarded by the trial court as damages against District for those copiers not returned by District and for which District cannot account. When viewed in conjunction with failure to make payments as required by the leases, retention of copiers establishes default, not mutual ratification of renewal.

¶ 36 It was error for the trial court to assess damages against District based on the automatic month-to-month renewal provisions in the leases for holdover rents for a period beyond the lease term to the date of trial. This is also prohibited by § 5–117(B) and the protection provided by Article 10, § 26 of the Oklahoma Constitution. When District defaulted on its obligations to pay and to return the copiers, G.E. was entitled to seek recovery of possession of the unreturned copiers or their value. The value of the missing copiers is an element of damages to be considered by the trial court on remand.

¶ 37 The analysis above requires reversal of the amount of damages awarded to G.E. and remand of this issue for recalculation in accordance with this opinion.

## III. Attorney Fees

¶ 38 Based on the outcome of this Court's decision on the orders granting summary judgment and damages, District seeks reversal or modification of the award of attorney fees to G.E. Our review of the attorney fee issue shows no error by the trial court as to G.E.'s entitlement to fees. However, under *State ex rel. Burk v. City of Oklahoma City,*

1979 OK 115, ¶ 8, 598 P.2d 659, 661, the amount of damages awarded is an element to be considered by the trial court in setting attorney fees. Because the damages amount is now to be recalculated, the amount of attorney fees must also be reviewed on remand.

## CONCLUSION

¶ 39 After a thorough review of the record examined in the light most favorable to District as the non-moving party, we conclude that the trial court did not err in granting G.E.'s motion for summary judgment as to liability on the leases or in denying District's cross-motion for summary judgment. The evidentiary materials presented reveal no genuine issue of material fact as to District's liability, and we affirm the trial court's order granting summary judgment to G.E. on this issue. We further conclude that the trial court's award of damages must be reversed and remanded for recalculation in conformity with this opinion. Finally, the trial court did not abuse its discretion in finding that G.E. is entitled to attorney fees, but the amount must be reversed and remanded for review in light of the trial court's recalculation of the amount of damages.

¶ 40 **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

FISCHER, P.J. and GABBARD, J. (sitting by designation), concur.