2010 OK CIV APP 37

**TRADERS INSURANCE COMPANY,**
Plaintiff/Appellant,

v.

**Julie JOHNSON and Billy Johnson,**
Defendants/Appellees.

No. 107,812.

Court of Civil Appeals of Oklahoma,
Division No. 4.

April 2, 2010.

C. Scott Loftis, McAtee & Woods, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Steven T. Mortimer, George J. Kanelopoulos, Jr., Kanelopoulos Law Firm, P.C., Oklahoma City, OK, for Defendants/Appellees.

DOUG GABBARD II, Presiding Judge.

¶1 In this accelerated appeal, Plaintiff/Appellant, Traders Insurance Company (Traders), seeks review of a trial court order denying its motion for summary judgment and granting summary judgment to Defendants/Appellees, Julie Johnson and Billy Johnson (the Johnsons). We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

¶2 In August 2006, the Johnsons purchased a policy of automobile liability insurance with Traders. They purchased the insurance through Aballtime, L.L.C., a duly authorized insurance agency and agent of Traders. At the time of this purchase, both Johnsons signed an uninsured/underinsured motorist (UM) coverage form rejecting UM coverage. The Johnsons' daughter, Amber Brown, was a named insured on the policy.

¶3 On June 25, 2008, the Johnsons asked Amber to take their premium payment to Aballtime and add a new vehicle to their policy. Amber presented the payment to Aballtime, and Aballtime accepted it on behalf of Traders. However, because the Johnsons sought coverage for a new vehicle that was not a replacement vehicle, Oklahoma law required Traders to issue a new policy, instead of a renewal policy. Aballtime prepared the policy, listed the Johnsons as applicants and named insureds, and requested that Amber sign the policy and a new UM form rejecting UM coverage. Amber did so.

¶4 On July 10, 2008, Julie Johnson allegedly sustained injuries in a motor vehicle accident while driving a vehicle which was covered by the policy. The other motorist was uninsured. Traders denied coverage based upon Amber's written rejection of UM coverage. On November 21, 2008, Traders filed a petition for declaratory judgment requesting that the trial court determine that the Johnsons had no UM coverage because their daughter had rejected same. Ultimately, Traders filed a motion for summary judgment, and the Johnsons filed a response.

¶5 Based upon the pleadings and evidentiary material, the trial court found:

(1) Neither of the Johnsons signed the rejection of UM coverage;

(2) Amber Brown was not a named insured or applicant on the policy;

(3) Amber Brown "did not have the authority to reject UM coverage on behalf of" the Johnsons "nor any named insured pursuant to *36 O.S. § 3636;* " and

(4) Therefore, the Johnsons were covered under the policy.

¶6 Based upon these findings, the trial court denied Traders' motion and granted summary judgment to the Johnsons. Traders now appeals.

## STANDARD OF REVIEW

¶7 Summary judgments may only be granted where there is no dispute as to any material fact. *Indiana Nat'l Bank v. State Dep't of Human Servs.*, 1993 OK 101, ¶10, 857 P.2d 53, 59. We review summary judgment orders *de novo*, that is, without deference. *Young v. Macy*, 2001 OK 4, ¶9, 21 P.3d 44, 47.

## ANALYSIS

■ ¶8 Section 3636 provides that no policy of insurance may be sold in Oklahoma unless it includes UM coverage. Further:

G. A *named insured or applicant shall have the right to reject uninsured motorist coverage in writing,* and except that unless a named insured or applicant requests such coverage in writing, such coverage need not be provided in or supplemental to any renewal, reinstatement, substitute, amended or replacement policy where a named insured or applicant had rejected the coverage in connection with a policy previously issued to him by the same insurer.

H.   Notwithstanding the provisions of this section, the following are the only instances in which *a new form* affecting uninsured motorist coverage *shall be required:*

1.   When an insurer is notified of a change in or an additional named insured;

2.   *When there is an additional vehicle that is not a replacement vehicle;* provided, a new form shall not be required for the addition, substitution or deletion of a vehicle from a commercial automobile liability policy; or

3.   When the amount of bodily injury liability coverage is amended.   Provided, any change in premium alone shall not require the issuance of a new form.

After selection of limits, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or applicant for insurance, *the insurer shall not be required to notify any insured in any renewal, reinstatement, substitute, amended or replacement policy as to the availability of such uninsured motorist coverage or such optional limits.* Such selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds under the policy and shall continue until a named insured requests in writing that the unin-

sured motorist coverage be added to an existing or future policy of insurance. (Emphasis added).[1]

Because the Johnsons added a vehicle that was not a replacement vehicle to the policy, a new policy form and new UM rejection form were required.

¶ 9   Prior to 1990, § 3636 did not allow anyone except the named insured to reject UM coverage.   *See Plaster v. State Farm Mut. Auto. Ins. Co., Inc.,* 1989 OK 167, 791 P.2d 813.   However, in that year, the Legislature amended the statutory language to provide that either a named insured or an applicant could reject UM coverage for all named insureds.   Here, Traders asserts that Amber Brown "signed a UM rejection form as an applicant and proposed insured of the applicable insurance policy."

¶ 10   The relevant Automobile Insurance Application [2] begins as follows:

**Applicant Information:**

JULIE JOHNSON

\* \* \* \* \* \* \*

NORMAN, OKLAHOMA 73071

Home Phone: \* \* \* \* \* \* Mobile Phone:

Work Phone:

Co–Applicant:  BILLY JOHNSON

Secondary Applicant:

Amber Brown is listed in only one place on the Application—under the heading of "People Who Reside or Live With You;   And People Who Drive Your Cars;   And People You Intend To Exclude From Coverage."

■   ¶ 11   Although Traders asserts that Amber Brown was both a "named insured (applicant)" and "proposed insured," because she signed the policy and UM form in that manner, she was neither.[3]   The policy specifically defined a "named insured" as:

> The undersigned hereby warrants and certifies that they have asked all of the questions contained in this application, exactly as they are presented and the statements contained herein are the applicant's statements and are correct to his/her knowledge; that this application was completed and then signed by the named insured (applicant) in his/her presence; that a completed copy has been given to the insured; and that the undersigned will retain this original signed copy hereof.

---

1.   We have quoted the version of the statute in place at the time of the events of this lawsuit.

2.   The Application was attached to Traders' motion for summary judgment.

3.   Traders has not alternatively asserted that the policy was invalid because Amber Brown signed it.   In this regard, we merely note that under Amber Brown's signature on the policy as the named insured, Traders' agent Aballtime made the following warranty:

[O]nly the *person* specifically listed in the *Declarations* as the named *insured*—but does not include any other *person* (including but not limited to *persons* listed in the *Declarations* or in the application for coverage) that may be described as a driver, operator, resident, spouse, or *excluded driver*.[4]

The policy uses the terms "named insured" and "applicant" interchangeably. The face of the policy indicates that the applicant and co-applicant—i.e., the proposed and named insureds—were the Johnsons, not Amber Brown. Thus, the trial court correctly concluded that Traders was required by § 3636 to obtain the Johnsons' signatures on the UM form, that it did not do so, and that Traders' request for summary judgment should be denied.

¶ 12 The Johnsons did not request summary judgment in this case, candidly admitting in their response brief that "reasonable minds could come to differing conclusions on these material issues of fact. . . ." We agree with this assessment. Attached to Traders' motion for summary judgment is an affidavit from Aballtime agent Chris Kane stating that "Amber Brown was the family member that primarily dealt with bringing in the insurance payments and signing Applications on behalf of the Johnson Family." The Johnsons do not completely deny this allegation, but state that Mr. Johnson usually signed the application, and that while Amber was sent to Aballtime to deliver the premium payment and add the new vehicle as instructed by her mother, she did not have any authority to sign any documents.

■■■ ¶ 13 Generally, an agent is one who is authorized to act for another. *Black's Law Dictionary* 64 (7th ed. 1999). A person may have apparent authority to act as another's agent when there is: (1) conduct of the principal which would reasonably lead the third party to believe that the agent was authorized to act on the principal's behalf;

(2) reliance thereon by the third party; and (3) change of position by the third party to his detriment. *See Sparks Bros. Drilling Co. v. Texas Moran Exploration Co.*, 1991 OK 129, ¶ 17, 829 P.2d 951, 954. The existence of actual authority between principal and agent is "not a prerequisite to establishing apparent authority." *Stephens v. Yamaha Motor Co., Ltd.*, 1981 OK 42, ¶ 8, 627 P.2d 439, 441. However, when it is absent, apparent authority usually results "from a manifestation by the principal to a third person that another is his agent." *Id.* In other words, the apparent power of an agent must be determined by the acts of the principal, and not by the acts of the agent. In determining whether an agent has apparent authority, the prior course of conduct and statements of the principal may be examined. Generally, agency is a question of fact which must be determined by the trier of fact. *A–Plus Janitorial & Carpet Cleaning v. Employers' Workers' Comp. Ass'n*, 1997 OK 37, ¶ 32, 936 P.2d 916, 930.

■■■ ¶ 14 If the Johnsons manifested to Traders that Amber had the implied or apparent authority to sign the application and rejection on their behalf through their prior dealings, statements, or conduct, then she had the apparent authority to reject UM coverage. *See, for example, Freeman v. Bodyworks, Inc.*, 2008 OK CIV APP 114, 213 P.3d 838 (where a father claimed that he only gave his daughter authority to enter into a contract, and did not give her authority to sign one with an arbitration clause). We find nothing in the statutory language that prohibits an agent with actual or apparent authority from rejecting UM coverage on behalf of his or her principal.

¶ 15 Because the pleadings raise a substantial dispute as to whether Amber Brown had the apparent authority to execute the application and sign the UM rejection, summary judgment should not have been granted to the Johnsons.[5]

---

4. This definition is somewhat different than the way the term is generally used in § 3636. The Supreme Court has held that the term "named insured" as used in § 3636 usually refers to "the person named as insured." *See Moon v. Guarantee Ins. Co.*, 1988 OK 85, ¶ 9, 764 P.2d 1331, 1335.

5. Although the policy in question was for a period of six months, ratification is not in question because the accident occurred only a few days after the policy's down payment was made and before any monthly premium was paid.

## CONCLUSION

¶ 16 For the reasons set forth above, the trial court's denial of summary judgment in favor of Traders is affirmed, and its grant of summary judgment to the Johnsons is reversed. This case is remanded for further proceedings.

¶ 17 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

GOODMAN, J., concurs, and RAPP, J., not participating.