**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 10, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

KEVIN GRESHAM,

       Plaintiff - Appellant,

v.

TOWN OF DEPEW, OKLAHOMA, a
municipality and political subdivision
of the State of Oklahoma,

       Defendant - Appellee.

No. 24-5021
(D.C. No. 4:20-CV-00306-TDD-SH)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **MATHESON**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

After Appellant Kevin Gresham was terminated from his position as

Chief of Police, he sued Appellee Town of Depew in federal district court,

claiming breach of contract and a violation of his Due Process rights under

the Fourteenth Amendment. The district court granted summary judgment

to the Town, and Mr. Gresham now appeals. Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.

_____

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# I[1]

## A

The Town is an Oklahoma statutory town under 11 Okla. Stat. §§ 12-101–14. A five-member Board of Trustees governs the Town. *Id.* §§ 12-102, 12-106. The Town also has a mayor. Section 12-105 outlines the mayor's powers. The Town has not expanded the mayor's powers by ordinance or otherwise.

At a board meeting on July 1, 2019, the Board voted to hire Mr. Gresham as the Chief of Police. The Board agreed to pay Mr. Gresham "at the rate discussed in his interview"—$42,000 per year. The Board also agreed to send Mr. Gresham "to chief's school." App. I at 137. It appears the Board did not provide Mr. Gresham a written contract.

Mr. Gresham insisted on having a written employment contract, so he drafted one (the Employment Contract). Consistent with the oral agreement on July 1, the Employment Contract included a salary of $42,000 per year and stated Mr. Gresham would attend "Chief School." App. I at 219–20. The

---

[1] The facts recited here derive mostly from the statements of undisputed facts in the parties' summary judgment briefing. We also recite the facts in the light most favorable to Mr. Gresham, the non-movant. *See Deherrera* v. *Decker Truck Line, Inc.*, 820 F.3d 1147, 1151 n.1 (10th Cir. 2016) ("In reciting the facts of this case, we view the evidence in the light most favorable to the non-moving party, as is appropriate when reviewing a grant of summary judgment." (quoting *Weigel* v. *Broad*, 544 F.3d 1143, 1147 (10th Cir. 2008)).

Employment Contract also contained additional terms not discussed on July 1. It specified a term of two years, described Mr. Gresham's "job duties and responsibilities," App. I at 219, provided for paid time off following a "probationary period," App. I at 220, promised expense reimbursement, and set out the terms under which the Town could terminate Mr. Gresham. The terms of termination included the following buy-out provision:

> Should the Employer decide to terminate their working relationship and/or his Employment Contract, for reasons not pertaining to Employee's gross misconduct, the party shall pay the Employee half of the remaining salary of his contract.

App. I at 221.

On July 23, 2019, Mr. Gresham presented the Employment Contract to the Town's mayor, Dionna Marker, and they both signed it. According to Mr. Gresham, when Mayor Marker signed the Employment Contract, she told him "the Town" had approved it. App. II at 386, 338. It is undisputed the Board never voted to approve the Employment Contract. But, at some point in the three months between July 23 and October 21, the Board became aware of the Employment Contract.

Mr. Gresham started work as Chief of Police on August 1, 2019. On September 11, 2019, Mr. Gresham experienced a seizure. The same day, Mr. Gresham met with Mayor Marker and Board Member Jason Hopkins to discuss how to proceed given his health condition. According to Mayor

3

Marker's deposition testimony, the Employment Contract and the buy-out provision came up during that conversation.

Days later, on September 17, Mr. Gresham met with the Board to discuss a doctor's order that he could not drive for six months or use dangerous equipment. The Board then proposed Mr. Gresham accept "paid restricted duties," primarily including desk work. App. I at 138. The Board also asked Mr. Gresham for more medical documentation. After the September 17 meeting, Board Member Hopkins told Mr. Gresham that the Board "was considering ways to void [his] contract and terminate [his] employment." App. II at 340.

On October 21, the Board held a special meeting to discuss Mr. Gresham's job performance. Mr. Gresham attended the meeting. Mr. Gresham also was invited to attend the Board's private "executive session," but he declined because he was not allowed to bring his lawyer. App. I at 236; *see* 25 Okla. Stat. § 307(B)(1) (discussing "executive sessions").

The Board then voted four to one to terminate Mr. Gresham. Board Member Hopkins dissented. The Board paid Mr. Gresham his salary until his termination, but it took no action under the buy-out provision in the Employment Contract.

**B**

In June 2020, Mr. Gresham sued the Town in the United States District Court for the Northern District of Oklahoma.[2] He claimed the Town breached the Employment Contract by refusing to comply with the buy-out provision after it terminated him. Mr. Gresham also brought a Due Process claim under federal law.[3] He claimed the Employment Contract created a "property interest in his continued employment," but he "was denied a meaningful opportunity to be heard regarding the termination of his employment, as required under the Fourteenth Amendment to the United States Constitution." App. I at 17. The Town then moved—unsuccessfully—to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). It argued, among other things, Mr. Gresham failed to state a breach-of-contract claim because he was terminated during a probationary period.

The case proceeded to discovery, followed by cross-motions for summary judgment. As relevant here, the Town insisted it was entitled to summary judgment because the Employment Contract was invalid under Oklahoma law. According to the Town, "the Mayor lacked the authority to

---

[2] Mr. Gresham also sued certain individual Board members. The district court dismissed the individual defendants, and that decision is not before us. The Town is the only remaining defendant.

[3] It is because of Mr. Gresham's federal claim that the district court possessed subject matter jurisdiction. *See* 28 U.S.C. § 1367(a).

contractually bind" it. App. I at 142. The Town argued this was dispositive for both Mr. Gresham's breach-of-contract claim and his constitutional claim. Mr. Gresham insisted Mayor Marker "possessed apparent authority sufficient to bind" the Town, App. II at 397 (heading capitalization omitted), and further contended the "Town ratified the Employment Contract through the actions of its Board of Trustees," App. II at 394 (heading capitalization omitted).

In a written order, the district court granted summary judgment to the Town on both of Mr. Gresham's claims. The district court first concluded Mayor Marker lacked actual authority under Oklahoma law to contract on behalf of the Board. *See* App. III at 581–82 (noting 11 Okla. Stat. § 12-105 outlines the mayor's narrow powers, which do not include executing contracts); App. III at 583–84 (emphasizing that an Oklahoma Attorney General opinion states "in the absence of an ordinance granting certain powers, duties and functions to the mayor of a town with a statutory town board of trustees, a mayor has no powers, duties and functions prescribed by law beyond those listed in Section 12-105" (quoting App. I at 204)).

The district court then reasoned "when actual authority is absent—as is the case here—apparent authority 'usually results "from a manifestation by the principal to a third person that another is his agent."'" App. III at 585 (quoting *Traders Ins. Co.* v. *Johnson*, 231 P.3d 790, 793 (Okla. Civ. App.

6

2010)). The court went on, "the apparent power of an agent must be determined by the acts of the principal, and not by the acts of the agent." App. III at 585 (quoting *Traders Ins. Co.*, 231 P.3d at 793). But Mr. Gresham's arguments, the court concluded, inappropriately focused solely on Mayor Marker's actions as the agent, "not the Board's" actions as the principal. App. III at 585.

Finally, the district court considered and rejected Mr. Gresham's argument that, notwithstanding Mayor Marker's lack of authority, the Board ratified the Employment Contract. The court explained, "Ratification . . . has been found in cases where a party: 1) has accepted the benefits of the contract, whether void or voidable 2) with full knowledge of the facts 3) at a time when the accepting party was fully competent and capable of contracting for himself." App. III at 586 (quoting *Kincaid* v. *Black Angus Motel, Inc.*, 983 P.2d 1016, 1020 (Okla. 1999)). It then declined to find ratification in this case for three reasons.

First, the court explained, Mr. Gresham "was paid for his services up to, and through, his termination," so his case was unlike one where a "party directly benefited from the agreement, but then refused to pay its contractual counterparty." App. III at 590. "Second, there is no evidence in the record that the Board acted in conformity with Plaintiff's self-drafted employment contract, as opposed to the express terms of employment

7

approved by the Board when it hired Plaintiff" at the July 1 board meeting. App. III at 591. And third, "there is no evidence in the record," the court found, "that the Board had 'full knowledge of the facts' surrounding Plaintiff's self-drafted employment contract." App. III at 591.

Turning to Mr. Gresham's Due Process claim, the district court explained "[t]o prevail on a procedural due process claim, Plaintiff must prove the existence of 'a constitutionally cognizable liberty or property interest with which the state has interfered.'" App. III at 592 (quoting *Steffey* v. *Orman,* 461 F.3d 1218, 1221 (10th Cir. 2006)). Observing Mr. Gresham's supposed "property interest" was based on an *invalid* contract, the court rejected his claim. App. III at 593.

This timely appeal followed.

## II

We now turn to the merits and, as we explain, discern no error. We first conclude the Employment Contract was invalid under Oklahoma law. And, like the district court, we further conclude the Employment Contract's invalidity is dispositive of both Mr. Gresham's breach of contract and constitutional claims.

## A

We review a grant of summary judgment "de novo, applying the same standard as the district court." *Universal Underwriters Ins. Co.* v. *Winton,*

8

818 F.3d 1103, 1105 (10th Cir. 2016). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). In applying this standard, we "view[] the evidence in the light most favorable to the nonmoving party." *Zahourek Sys., Inc.* v. *Balanced Body Univ., LLC*, 965 F.3d 1141, 1143 (10th Cir. 2020). A "fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Adamson* v. *Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). And "[w]here, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy [the summary judgment] burden by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Id.* (quoting *Adler* v. *Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Given our standard of review, we interpret the parties' disputes about the evidence in the light most favorable to Mr. Gresham.

One further rule is noteworthy here. Federal Rule of Civil Procedure 56(e)(2), which governs summary judgment, provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion . . . ." And we have acknowledged "a party may be deemed to have admitted a fact on summary judgment except to the

9

extent (and for the reasons) that the party gives for denying that fact."

*Butler* v. *Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1151 (10th Cir. 2023).

The record confirms Mr. Gresham has elected not to address or dispute most

of the Town's proposed undisputed facts. The district court properly deemed

those facts admitted, and we do the same. *See* App. III at 579 n.2.

### B

We now turn to the state law governing Mr. Gresham's contract claim.

To prevail on a breach-of-contract claim under Oklahoma law, a plaintiff

must show "1) formation of a contract; 2) breach of the contract; and 3)

damages as a direct result of the breach." *Digital Design Grp., Inc.* v. *Info.*

*Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). The key issue before us

concerns the first element: contract formation. To form a contract, parties

must be "capable of contracting." 15 Okla. Stat. § 2(1).

Recall, 11 Okla. Stat. § 12-105 outlines the powers of the mayor of a

statutory town.[4] As the district court correctly observed, this statute does

---

[4] Those powers are as follows:

The mayor shall preside at meetings of the board and shall
certify to the correct enrollment of all ordinances and
resolutions passed by it. He shall be recognized as head of the
town government for all ceremonial purposes and shall have
such other powers, duties and functions as may be prescribed by
law or ordinance. The mayor shall have all the powers, rights,
privileges, duties and responsibilities of a trustee, including the
right to vote on questions. During the absence, disability or

not empower the Town's mayor to sign contracts on behalf of the Town without authorization. On appeal, Mr. Gresham concedes Mayor Marker did not possess "actual authority" to bind the Town in contract. Op. Br. at 32–33 ("[I]t appears that Marker did not possess, solely in her role as Mayor, authority to bind the Town to a contract with a third party . . . ."). This concession further refines our inquiry. In considering whether the Employment Contract was validly executed, we must consider only whether Mayor Marker had "apparent authority to act" on the Board's behalf, and if not, whether the Board ratified the Employment Contract. *Franco* v. *State ex rel. Bd. of Regents of the Univ. of Okla.*, 482 P.3d 1, 14 n.6 (Okla. Civ. App. 2020); *see Stephens* v. *Yamaha Motor Co., Ltd., Japan*, 627 P.2d 439, 441 (Okla. 1981) ("The existence of actual authority between principal and agent is not a prerequisite to establishing apparent authority."); *Kincaid*, 983 P.2d at 1020 (outlining the ratification standard).

## 1

"Apparent authority results from a manifestation by the principal to a third person that another is his agent." *Stephens*, 627 P.2d at 441. Such

---

suspension of the mayor, the board shall elect from among its members an acting mayor. When a vacancy occurs in the office of mayor, the board shall elect another mayor from among its members to serve for the duration of the unexpired term.

11 Okla. Stat. § 12-105.

"authority exists only to the extent that it is *reasonable* for the third person dealing with the agent to believe that the agent is authorized." *Id.* (emphasis added) (quoting Restatement (Second) of Agency § 8 cmt. c (Am. L. Inst. 1958)). Importantly, "the apparent power of an agent must be determined by the acts of the principal, and not by the acts of the agent."[5] *Traders Ins. Co.*, 231 P.3d at 793.

"The burden is upon the Plaintiff[] to allege facts essential to establish the existence of the agency relationship and the nature and extent thereof." *Keel* v. *Titan Constr. Corp.*, 639 P.2d 1228, 1230 (Okla. 1981); *Thornton* v.

---

[5] There appears to be some tension within Oklahoma law on the elements establishing apparent authority. *Compare Traders Ins. Co.* v. *Johnson*, 231 P.3d 790, 793 (Okla. Civ. App. 2010) (requiring detrimental reliance), *and Sparks Bros. Drilling Co.* v. *Tex. Moran Expl. Co.*, 829 P.2d 951, 954 (Okla. 1991) (same), *with Sanders* v. *Cole*, 454 P.3d 761, 774 (Okla. Civ. App. 2019) ("Detrimental reliance is not an element a plaintiff must prove to establish apparent authority."); *see also Eddy* v. *Bricktown Hosp., LLC*, No. CIV-18-1051-SLP, 2020 WL 12787576, at *7 (W.D. Okla. Nov. 24, 2020) (acknowledging this tension).

But any tension does not impact our disposition. Apparent authority clearly requires a manifestation *from the principal* that the agent has authority at the time of the transaction, which is the crucial point here. *See Franco* v. *State ex rel. Bd. of Regents of the Univ. of Okla.*, 482 P.3d 1, 14 (Okla. Civ. App. 2020) ("Fundamental to the law of agency is . . . the rule that an agent cannot unilaterally expand the scope of authority granted by the principal."); *Diamond Sevens, L.L.C.* v. *Intelligent Home Automation, Inc.*, 245 P.3d 1260, 1264 (Okla. Civ. App. 2010) ("An agency relationship created under the theory of apparent authority is not established on the representations or statements of the putative agent alone."); *Sanders*, 454 P.3d at 773 (recognizing apparent authority requires manifestation by the principal).

*Ford Motor Co.*, 297 P.3d 413, 421 (Okla. Civ. App. 2012) (observing the burden is on the "party alleging apparent authority"). "Generally, agency is a question of fact which must be determined by the trier of fact." *Traders Ins. Co.*, 231 P.3d at 793. However, "[i]f the facts relied on to establish the existence and scope of an agency are undisputed and conflicting inferences cannot be drawn, whether or not an agency exists and the scope of an agent's authority 'is [a] question of law for the court.'" *Franco*, 482 P.3d at 14 (second alteration in original) (quoting *Keel*, 639 P.2d at 1232); *see Stephens*, 627 P.2d at 442 (affirming summary judgment when there was insufficient evidence of apparent authority).

According to Mr. Gresham, Mayor Marker possessed apparent authority because a jury could find (1) on September 11, Mayor Marker and Board Member Hopkins discussed the Employment Contract with Mr. Gresham; (2) on September 17, Board Member Hopkins told Mr. Gresham other Board members were seeking to void the Employment Contract; and (3) before terminating Mr. Gresham on October 21, Board members had learned of the Employment Contract. Construed in Mr. Gresham's favor, these facts fail as a matter of law to establish apparent authority.

First, the record does not show it was "reasonable" for Mr. Gresham to believe Mayor Marker possessed authority *when she signed* the Employment Contract. *Stephens*, 627 P.2d at 441 (quoting Restatement

(Second) of Agency § 8 cmt. c). That is the relevant period—not months later—because Mr. Gresham seeks to show he "reasonably believed that [Mayor] Marker was cloaked with apparent authority to act on behalf of Appellee Town *in executing* the Employment Contract." Op. Br. at 23–24 (emphasis added). Courts have routinely held "one who did not rely on an agent's apparent authority *at the time of the transaction* cannot later resort to the existence of that authority." 12 Williston on Contracts § 35:21 (4th ed. 2024) (emphasis added); *GP3 II, LLC* v. *Litong Cap., LLC*, 35 F.4th 1124, 1128 (8th Cir. 2022) ("[T]hese events occurred after the Contract was purportedly formed, rendering them ineffective in establishing apparent authority at that time."); *Lagerquist* v. *Stergo*, 752 N.W.2d 168, 174 (N.D. 2008) ("[T]he district court erred as a matter of law in finding ostensible agency . . . for purposes of entering into a contract because [the] communications . . . occurred after the contract was made . . . ."); *R-Delight Holding LLC* v. *Anders*, 246 F.R.D. 496, 502 (D. Md. 2007) ("For one thing, any representations from the alleged principal . . . occurring *after* the contract was executed cannot support a finding of apparent authority at the time the parties entered into the contract."). We see no reason Oklahoma law would require a different result. Mr. Gresham offers no contrary authority.

The events Mr. Gresham points to came *after* he and Mayor Marker signed the Employment Contract on July 23. This is obviously so for any representations made on September 11 or September 17. As for the Board knowing about the Employment Contract before terminating Mr. Gresham on October 21, that fact comes from Mayor Marker's testimony. Mayor Marker testified "the Board had not seen this contract when I signed it," explaining she told Board members about the contract "after the fact." App. II at 287–88. And Mr. Gresham does not dispute the Board never voted to approve the Employment Contract before Mayor Marker signed it.

Second, the evidence Mr. Gresham marshals does not suggest it was "reasonable" for him to believe Mayor Marker possessed authority to bind the Town. *Stephens*, 627 P.2d at 441 (quoting Restatement (Second) of Agency § 8 cmt. c). In Oklahoma, "[p]ersons dealing with public officers are bound to know the extent of their authority." *Nichols* v. *Jackson*, 55 P.3d 1044, 1045 (Okla. 2002); *see Nottingham* v. *City of Yukon*, 766 P.2d 973, 976 (Okla. 1988) ("Whoever contracts with a municipality does so with notice of the limitations on its or its agents' powers. Everyone is presumed to know the law, and whoever contracts with such municipality or furnishes it supplies does so with reference to the law; if such persons go beyond the limitations imposed, they do so at their own peril." (quoting *Indep. Sch. Dist. No. 1, McIntosh Cnty.* v. *Howard*, 336 P.2d 1097, 1098 (Okla. 1959)).

15

Against that backdrop, at most, Mr. Gresham tells us the Board (1) knew the Employment Contract existed, and (2) wished not to be bound by it. A jury could not find this demonstrated to Mr. Gresham that Mayor Marker was *authorized* to execute the Employment Contract.

We thus see no reason to disturb the district court's conclusion that on the summary judgment record—properly construed for Mr. Gresham— Mayor Marker lacked apparent authority to execute the Employment Contract.

**2**

Mr. Gresham's ratification theory likewise does not warrant reversal. When an agent signs a contract without actual or apparent authority, the principal may "ratify" the contract. *See Diamond Sevens, L.L.C.* v. *Intelligent Home Automation, Inc.*, 245 P.3d 1260, 1265 n.4 (Okla. Civ. App. 2010) ("Ratification . . . may be defined as the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another, who at the time assumed to act as his agent in doing the act or making the contract without authority to do so." (citing *Amazon Fire Ins. Co.* v. *Bond*, 165 P. 414, 418 (Okla. 1917)). As the district court correctly explained, ratification "has been found in cases where a party: 1) has accepted the benefits of the contract, whether void or voidable 2) with full knowledge of the facts 3) at a time when the accepting party

16

was fully competent and capable of contracting for himself." *Kincaid*, 983 P.2d at 1020; *G.E. Cap. Info. Tech. Sols., Inc.* v. *Okla. City Pub. Schs.*, 173 P.3d 114, 120 (Okla. Civ. App. 2007) (applying same test when the principal was a municipal entity). Like with apparent authority, the "party relying on a ratification" theory "has the burden of proving it." *Riddle* v. *Ellis*, 281 P. 286, 290 (Okla. 1929). And while ratification is generally a fact question, it presents a legal one when there is "only [one] conclusion as a matter of law to be drawn from the facts." *G.E. Cap.*, 173 P.3d at 120.

Applying these standards here, we conclude the Board did not ratify the Employment Contract. We first consider whether the Town "accepted the benefits of" the Employment Contract "with full knowledge of the facts." *Kincaid*, 983 P.2d at 1020. The district court correctly found the evidence did not support this conclusion. It is true the Board acted in conformity with the Employment Contract in that it accepted Mr. Gresham's employment as Chief of Police and paid him a salary of $42,000. But these actions also conformed to the terms of Mr. Gresham's employment agreed upon at the July 1 board meeting. On this record, we cannot say Mr. Gresham—the party asserting ratification—has satisfied his burden. *See Riddle*, 281 P. at 290 (holding evidence that principals accepted payment consistent with a contract, without more, did not establish ratification); *Williams* v. *TAMKO Bldg. Prods., Inc.*, 451 P.3d 146, 152–53 (Okla. 2019) (holding, when no

17

evidence suggested principals were aware of a contract's arbitration clause, there was no ratification); *Sundance Energy Okla., LLC* v. *Dan D Drilling Corp.*, No. CIV-13-991-R, 2014 WL 6606438, at *5 (W.D. Okla. Nov. 20, 2014) (holding evidence consistent with both the existence and the absence of an express contract did not establish ratification of the express contract). A jury therefore could not find ratification on these facts alone.[6]

Finally, Mr. Gresham contends the Board ratified the Employment Contract because it "never took any action to declare . . . that the Employment Contract was invalid," despite knowing Mr. Gresham believed it was valid. Op. Br. at 30 (citing *Minneapolis Threshing Mach. Co.* v. *Humphrey*, 117 P. 203 (Okla. 1911)). We remain unpersuaded. "It is the rule in Oklahoma that where a principal, with knowledge of the unauthorized act of his agent, remains silent and acquiesces therein *for an unreasonable time*, he will be presumed to have ratified such unauthorized act."

---

[6] Mr. Gresham also suggests a jury could find ratification because of two facts we have already discussed. Mr. Gresham stresses a jury could find that, on September 11, Mayor Marker and Board Member Hopkins discussed the Employment Contract with him; and on September 17, Board Member Hopkins told him the Board was seeking not to be bound by the Employment Contract. But assuming these discussions occurred, this would still plainly fail to show ratification. That the Board was aware of the existence of the Employment Contract, and sought to avoid being bound by it, would not demonstrate it "accepted the benefits of" the Employment Contract "with full knowledge of the facts." *Kincaid* v. *Black Angus Motel, Inc.*, 983 P.2d 1016, 1020 (Okla. 1999).

18

*Alexander* v. *Phillips Petroleum Co.*, 130 F.2d 593, 604 (10th Cir. 1942) (emphasis added).

Here, the Board most likely discovered the Employment Contract about one month before terminating him on October 21—either around September 11 (when Mayor Marker and Board Member Hopkins spoke with Mr. Gresham about the contract), or around September 17 (when Board Member Hopkins told Mr. Gresham the Board was considering the contract). Still, Mayor Marker testified she told the Board about the Employment Contract at some unknown date after signing it, so the Board may have learned about the Employment Contract before September 11. Viewing the evidence in the light most favorable to Mr. Gresham, the record shows, at most, two to three months could have elapsed between when the Board first learned about the Employment Contract and when it terminated Mr. Gresham. We cannot say, therefore, that an "unreasonable" amount of time elapsed between the Board learning about the Employment Contract and the Board terminating Mr. Gresham. *Alexander*, 130 F.2d at 604. *See also Humphrey*, 117 P. at 204–05 (holding a jury could find ratification when the principal was silent for two years, and the principal's conduct was otherwise consistent only with ratification).[7]

---

[7] The district court also found no ratification because "Plaintiff was paid for his services up to, and through, his termination." App. III at 590.

In sum, Mr. Gresham's contract was invalid under Oklahoma law. Mr. Gresham has not revealed a dispute over any "material" fact. *See Adamson*, 514 F.3d at 1145 ("A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit."). He thus has ultimately failed to provide sufficient evidence to support an essential element of his claim. *See id.*

**3**

Mr. Gresham appears to raise one final argument for reversal. He argues the Town cannot now claim the Employment Contract is invalid because it previously represented in its motion to dismiss that the contract was valid. *See* Op. Br. at 19 (calling it "fatal" that the Town's motion to dismiss "averred that on October 21, 2019, the full Board voted to terminate Gresham's Employment Contract"). The Town contends "this argument was not made in the district court and is therefore forfeited." Resp. Br. at 16. The Town is correct, and Mr. Gresham has not argued for plain error review on appeal.[8] *See Richison* v. *Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir.

---

We need not also address this ruling given our disposition. *But see Stewart* v. *Bd. of Educ., Sch. Dist. No. 2, Stephens Cnty.*, 230 P. 504, 505 (Okla. 1924) (finding a public employee's ratification argument could proceed to trial even though she "had been paid her salary" before being terminated).

[8] Mr. Gresham says he raised this issue in the district court because, in one footnote in his response to the Town's motion for summary judgment, he argued "it is puzzling how Defendant can argue for annulling the

2011) (explaining "failure to argue for plain error . . . surely marks the end of the road for an argument for reversal not first presented to the district court"). And on appeal, Mr. Gresham does not tie this estoppel-like argument to applicable law, which provides additional grounds to deem it waived. *First W. Cap. Mgmt. Co.* v. *Malamed*, 874 F.3d 1136, 1146 (10th Cir. 2017) (finding a "judicial estoppel argument . . . inadequately briefed and thus waived"); *Leathers* v. *Leathers*, 856 F.3d 729, 750 (10th Cir. 2017) (finding an argument waived when the party "cites no legal authority and offers no explanation beyond [a] bare assertion").

Even if we considered it, Mr. Gresham's argument is unavailing. "Judicial estoppel is an equitable doctrine designed to 'protect the integrity of the judicial process' by preventing parties from changing their legal positions in the same case based on 'the exigencies of the moment.'" *Stender* v. *Archstone-Smith Operating Tr.*, 910 F.3d 1107, 1115 (10th Cir. 2018)

---

Employment Contract under provisions of Oklahoma law while simultaneously using the language of the written agreement to assert" a different argument. App. II at 390. Mr. Gresham also noted in one sentence of his summary judgment briefing that the Town did not dispute the contract's validity "until *after* the Court denied Defendant's Motion to Dismiss." App. II at 403. These brief statements were insufficient to preserve Mr. Gresham's new argument. *See Lyons* v. *Jefferson Bank & Tr.*, 994 F.2d 716, 722 (10th Cir. 1993) ("[V]ague, arguable references to [a] point in the district court proceedings do not . . . preserve the issue on appeal." (second and third alterations in original) (quoting *Monarch Life Ins. Co.* v. *Elam*, 918 F.2d 201, 203 (D.C. Cir. 1990))).

(quoting *New Hampshire* v. *Maine*, 532 U.S. 742, 749–50 (2001)). "[T]hree

factors typically inform" whether to apply judicial estoppel:

> (1) "a party's subsequent position must be clearly inconsistent
> with its former position"; (2) the "party succeeded in persuading
> a court to accept that party's former position, so that judicial
> acceptance of an inconsistent position in a later proceeding
> would create the perception that either the first or the second
> court was misled"; and (3) the party "would gain an unfair
> advantage in the litigation if not estopped."

*Malamed*, 874 F.3d at 1146 (quoting *Eastman* v. *Union Pac. R.R. Co.*, 493

F.3d 1151, 1156 (10th Cir. 2007)).

Mr. Gresham's argument fails at the outset: the Town has not taken

"clearly inconsistent" litigation positions. "Our caselaw has set a high bar

for estoppel proponents seeking to show that two positions are clearly

inconsistent." *United States* v. *Sup. Ct. of N.M.*, 839 F.3d 888, 911 (10th Cir.

2016). As the Town points out, at the motion to dismiss stage, a court

"accept[s] the well-pleaded facts alleged as true." *Clinton* v. *Sec. Benefit Life

Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023). Accordingly, the Town

sensibly also "treat[ed] Gresham's factual allegations as true"—including

those concerning contract formation. Resp. Br. at 16. But the Town never

admitted the contract was valid. Rather, the Town's answer later *denied*

that the contract was validly executed. Contending the contract was invalid

at the summary judgment stage, therefore, was not "clearly inconsistent"

with the Town's earlier litigation positions. *See Lehman Bros. Holdings,*

22

*Inc.* v. *Hirota*, No. 8:06-CV-2030-T-24-MSS, 2007 WL 6881841, at \*2 (M.D. Fla. Nov. 28, 2007) (similar).

C

We also affirm the district court's decision to grant summary judgment on Mr. Gresham's constitutional claim. "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey*, 461 F.3d at 1221. Mr. Gresham contends the Employment Contract creates the relevant property interest. App. I at 17 ("The contract of employment listed specific, exclusive and limited terms for the termination of Plaintiff Kevin Gresham's employment . . . . Accordingly, Plaintiff Kevin Gresham had a recognized property interest in his continued employment . . . ."). This means Mr. Gresham's Due Process claim necessarily fails if the Employment Contract is invalid. He does not contest this point.

**III**

We **AFFIRM** the district court's grant of summary judgment to the Town.

ENTERED FOR THE COURT

Veronica S. Rossman
Circuit Judge